GAYLE M. ATHANACIO (State Bar No. 130068)
gathanacio@sonnenschein.com
SANFORD KINGSLEY (State Bar No. 99849)
skingsley@sonnenschein.com
SONNENSCHEIN NATH & ROSENTHAL LLP
525 Market Street, 26th Floor
San Francisco, CA 94105-2708
Telephone: (415) 882-5000
Facsimile: (415) 882-0300

Attorneys for Defendants
Allstate Insurance Company and Allstate Indemnity Company

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VLAHO MILETAK,<br><br>                    Plaintiff,<br><br>          vs.<br><br>ALLSTATE INSURANCE COMPANY, an Illinois corporation, ALLSTATE INDEMNITY COMPANY, an Illinois corporation,<br><br>                    Defendants. | No. C 06-03778 JW (RS)<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF MILETAK'S MOTION IN SUPPORT OF ORDER GRANTING CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL**<br><br>**CONCURRENTLY FILED HEREWITH:**<br><br>**DECLARATIONS OF GAYLE M. ATHANACIO, AVRAM S. TUCKER AND CAROL MATTOX; OBJECTIONS TO DECLARATIONS OF JERALD UDINSKY AND GEOFFREY NUNBERG; OBJECTIONS TO DECLARATIONS OF MILETAK, MILLEN AND KORNHAUSER**<br><br>Hearing Date: December 14, 2009<br>Time:          9:00 a.m.<br>Dept.:          8<br>The Honorable James Ware |

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

# TABLE OF CONTENTS

**Page:**

STATEMENT OF THE ISSUES TO BE DECIDED ...................................................1

I. INTRODUCTION AND SUMMARY OF ARGUMENT..................................1

II. STATEMENT OF FACTS AND PROCEDURAL HISTORY .......................3

III. THE APPLICABLE LEGAL STANDARDS: RULE 23 AND PLAINTIFF'S BURDEN..........................................................................................8

IV. PLAINTIFF'S ERRONEOUS LEGAL ASSERTIONS DEFEAT HIS CLASS CERTIFICATION MOTION. ...........................................................9

    A. California's Extensive Regulation of Insurance And This Court's Prior Rulings Preclude Certification of Plaintiff's Claims...................9

        1. The CDI's Oversight And Regulation of Insurers' Setting of Rates. ...........................................................................10

        2. Offers of Renewal With Differing Payment Options Are Permissible. ....................................................................12

V. PLAINTIFF HAS NOT ESTABLISHED THE PREREQUISITES TO CLASS CERTIFICATION ...............................................................13

    A. Plaintiff Has Failed To Show The "Typicality" and "Adequacy" Requirements Are Met. ...............................................................13

        1. Plaintiff's Conduct Renders Him An Unsuitable Representative. ...........................................................13

        2. Plaintiff Cannot Adequately Protect The Class' Interests......17

    B. Plaintiff Does Not Establish That Common Issues Exist Or Predominate..................................................................................18

    C. Plaintiff Has Not Established Class Treatment is Superior or Manageable...................................................................................23

    D. Plaintiff Has Presented No Argument For Class-Wide "Restitution"................25

VI. CONCLUSION .................................................................................26

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

# TABLE OF AUTHORITIES

**Page(s):**

**CASES:**

*Alaska v. Suburban Propane Gas Corp.,*
  123 F. 3d 1317 (9th Cir. 1997) ................................................................................ 17

*Amchem Prods, Inc. v. Windsor,*
  521 U.S. 591 (1997) ................................................................................................ 23

*Anunziato v. eMachines, Inc.,*
  402 F.Supp. 2d 1133 (C.D. Cal. 2005) ..................................................................... 22

*AT & T v. Central Office Tel., Inc.,*
  524 U.S. 214 (1998) ................................................................................................ 11

*Baghdasarian v. Amazon, Inc.,*
  258 F.R.D. 383 (C.D. Cal. 2009) ......................................................................... 16, 18

*Blackie v. Barrack,*
  524 F. 2d 891 (9th Cir. 1975) .................................................................................. 22

*Brown v. Federal Express Corp.,*
  249 F.R.D. 580 (C.D. Cal. Feb. 26, 2008) ............................................................ 18, 23

*Buckland v. Threshold Enterprises, Ltd.,*
  155 Cal. App. 4th 798 (2007) .................................................................................. 23

*Caro v. Procter & Gamble Co.,*
  18 Cal. App. 4th 664 (1993) .................................................................................... 15

*CLRB Hanson Indus., LLC v. Google, Inc.,*
  2008 WL 2079200 (N.D. Cal. May 14, 2008) ....................................................... 15, 20

*Cohen v. DIRECTV, Inc.,*
  178 Cal. App. 4th 966 (2009) .............................................................................. 20, 21

*Cortez v. Purolator Air Filtration Prods. Co.,*
  23 Cal. 4th 163 (2000) ............................................................................................ 23

*Crawford v. Honig,*
  37 F. 3d 485 (9th Cir. 1994) .................................................................................... 17

*Day v. AT & T Corp.,*
  63 Cal. App. 4th 325 (1998) ................................................................................ 11, 12

*Dechert v. Cadle Co.,*
  333 F.3d 801 (7th Cir. 2003) ................................................................................... 22

*Deitz v. Comcast,*
  2007 WL 2015440 (N.D. Cal. 2007) ................................................................ 14, 16, 18

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

*Dukes v. Wal-Mart,*
 222 F.R.D. 189 (N.D. Cal. 2004) .................................................................9

*Endres v. Wells Fargo Bank,*
 2008 U.S. Dist. LEXIS 12159 (N.D. Cal. Feb. 6, 2008) ............................16, 23

*Epstein v. MCA,*
 50 F.3d 644 (9th Cir. 1995) ........................................................................22

*Equal Employ. Opportunity Comm'n v. General Tel. Co. Of Northwest, Inc.,*
 599 F.2d 322 (9th Cir. 1979) ......................................................................13

*Fletcher v. ZLB Behring LLC,*
 245 F.R.D. 328 (N.D. Ill. 2006) ..................................................................24

*Freedman v. Louisiana-Pacific Corp.,*
 922 F.Supp. 377 (D. Or. 1996) ...................................................................22

*Freeman v. Time Inc.,*
 68 F.3d 285 (9th Cir. 1995) ...................................................................15, 20

*Gallivan v. AT & T Corp.,*
 124 Cal. App. 4th 1377 (2004) ...................................................................11

*Gen. Tel. Co. of Southwest v. Falcon,*
 457 U.S. 147 (1982) ....................................................................................9

*Griffin v. Harris,*
 83 F.R.D. 72 (E.D. Pa. 1979) ......................................................................24

*Hackethal v. Nat'l Casualty Co.,*
 189 Cal. App. 3d 1102 (1987) .....................................................................15

*Haley v. Medtronic, Inc.,*
 169 F.R.D. 643 (C.D. Cal. 1996) .................................................................22

*Hanon v. Dataproducts Corp.,*
 976 F.2d 497 (9th Cir. 1992) ...............................................................8, 9, 13

*Harris v. Palm Springs Alpine Estates, Inc.,*
 329 F.2d 909 (9th Cir. 1964) ......................................................................22

*In re American Med. Sys.,*
 75 F. 3d 1069 (6th Cir. 1996) ......................................................................22

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.,*
 691 F. 2d 1335 (9th Cir. 1982) ....................................................................18

*In re First Am. Corp. Erisa Litig.,*
 2009 U.S. Dist. LEXIS 49141 (C.D. Cal. 2009) ......................................9, 25

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*In re Jackpot Enters. Sec. Litig.*,
    1991 U.S. Dist. LEXIS 16353 (D. Nev. 1991) ..................................................................22

*In re Juniper Networks, Inc.*,
    --- F.R.D. ---, 2009 WL 3353321 (N.D. Cal. Oct. 16, 2009) .........................................9

*In re MDC Holdings Sec. Litig.*,
    754 F.Supp. 785 (S.D. Cal. 1990) ....................................................................................22

*In re Sugar Indus. Antitrust Litig.*,
    1976 U.S. Dist. LEXIS 14955 (N.D. Cal. 1976) .............................................................22

*In re THQ, Inc. Sec. Litig.*,
    2002 WL 1833145 (C.D. Cal. Mar. 22, 2002)...................................................................22

*In Re Tobacco Cases II*,
    46 Cal. 4th 298 (2009)..............................................................................................passim

*In re Unioil Sec. Litig.*,
    107 F.R.D. 615 (C.D. Cal. 1985).......................................................................................22

*In re United Energy Corp. Solar Power Modules Tax Shelter Inv. Sec. Litig.*,
    122 F.R.D. 251 (C.D. Cal. 1988).......................................................................................22

*Jordan v. Paul Financial, LLC*,
    2009 U.S. Dist. LEXIS 7592 (N.D. Cal. Jan. 27, 2009)..............................................16, 17

*Kaldenbach v. Mut. of Omaha Life Ins. Co.*,
    178 Cal. App. 4th 830 (2009) ............................................................................................21

*Lavie v. Procter & Gamble Co.*,
    105 Cal. App. 4th 496 (2003) ......................................................................................15, 20

*Local Joint Executive Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
    244 F.3d 1152 (9th Cir. 2001) ...........................................................................................22

*Lozano v. AT&T Wireless Services, Inc.*,
    504 F.3d 718 (9th Cir. 2007) .............................................................................................22

*Mazur v EBay, Inc.*,
    257 F.R.D. 563 (N.D. Cal. 2009) ................................................................................17, 23

*McKinnis v. General Mills, Inc.*,
    2007 WL 4762172 (C.D. Cal. Sep. 18, 2007) .............................................................15, 20

*Morgan v. AT & T Wireless Services, Inc.*,
    177 Cal. App. 4th 1235 (2009) .........................................................................................16

*New Directions Treatment Services v. City of Reading*,
    490 F.3d 293 (3d Cir. 2007) ..............................................................................................22

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26ᵀᴴ FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

*Plascencia v. Lending 1st Mortgage*,
  2009 U.S. Dist. LEXIS 79585 (N.D. Cal. 2009) ......................................... 21, 22

*Rolex Employees Retirement Trust v. Mentor Graphics Corp.*,
  136 F.R.D. 658 (D. Or. 1991) ................................................................. 14

*Schaefer v. Overland Express Family of Funds*,
  169 F.R.D. 124 (S.D. Cal. 1996) ............................................................ 22

*Schneider v. Traweek*,
  1990 U.S. Dist. LEXIS 15596 (C.D. Cal. 1990) ....................................... 22

*Schulz v. Neovi Data Corp.*,
  152 Cal. App. 4th 86 (2007) ................................................................... 24

*Schwartz v. Harp*,
  108 F.R.D. 279 (C.D. Cal. 1985) ............................................................ 22

*Schwartz v. Upper Deck Co.*,
  183 F.R.D. 672 (S.D. Cal. 1999) .............................................................. 8

*Vasquez v. Superior Court of San Joaquin County*,
  4 Cal. 3d 800 (1971) ............................................................................. 22

*Walker v. Allstate Indem. Co.*,
  77 Cal. App. 4th 750 (2000) .............................................................. 10, 11

*Western Gulf Oil Co. v. Title Ins. & Trust Co.*,
  92 Cal. App. 2d 257 (1949) ................................................................... 23

*Zinser v. Accufix Research Institute, Inc*,
  253 F. 3d 1180 (9th Cir. 2001) .............................................................. 19

**STATUTES**

10 Cal. Code Regs § 2632.1 ...................................................................... 10

10 Cal. Code Regs § 2632.4 ...................................................................... 10

10 Cal. Code Regs § 2632.5 ...................................................................... 10

10 Cal. Code Regs § 2632.10 .................................................................... 10

Cal. Ins. Code § 480 ............................................................................. 8, 12

Cal. Ins. Code § 663(a) ........................................................................... 13

Cal. Ins. Code § 1860.1 ........................................................................... 10

Cal. Ins. Code § 1860.2 ........................................................................... 10

Cal. Ins. Code § 1861.02(a), ..................................................................... 10

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

1   Cal. Ins. Code § 1861.05(a) ................................................................ 10, 11

2   Cal. Ins. Code § 1861.10 ........................................................................ 11

3   Fed. R. Civ. P. 23 .................................................................................... 18

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

## STATEMENT OF THE ISSUES TO BE DECIDED

Pursuant to Civil Local Rule 7-4(a)(3), Defendants set forth the following issues to be decided:

1.      Whether Plaintiff's motion for class certification should be denied as it seeks monetary relief barred as a matter of law under California's statutory and regulatory scheme governing motor vehicle insurance and/or the "filed rate" doctrine?

2.      Whether Plaintiff's motion for class certification should be denied as it is premised on legal propositions that are incorrect and inconsistent with this Court's prior rulings in this action?

3.      Whether Plaintiff's motion for class certification should be denied as Plaintiff's claims are not typical of the class?

4.      Whether Plaintiff's motion for class certification should be denied as Plaintiff has not established the adequacy of representation?

5.      Whether Plaintiff's motion for class certification should be denied as Plaintiff has failed to establish that common issues exist and predominate?

6.      Whether motion for class certification should be denied as Plaintiff has failed to establish the superiority of proceeding as a class action?

7.      Whether Plaintiff's motion for class certification should be denied as Plaintiff has failed to establish that this action is manageable as a class action?

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

Case No. C 06-03778 JW (RS)

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

While Plaintiff would have this Court rule on his class certification motion without any real inquiry into (1) the actual elements of his claims, (2) his own conduct, or (3) whether the monetary relief he seeks awarded on a class wide basis is legally available or ascertainable, well-settled case law holds that this Court's role is not to rubber stamp his effort to certify a class. Far from demonstrating that he has met his burden, Plaintiff's class certification motion confirms class treatment is not appropriate.

In his motion, Plaintiff argues that because he contends the "due dates" on certain renewal policy bills were not the "actual" due dates, and because reliance by class members under the UCL is not required, class certification of his UCL and "unjust enrichment" claim is appropriate. However, Plaintiff's motion is based upon a misstatement of the Court's role in assessing whether class treatment is warranted, neglects to mention, let alone address, the elements of the claims which he seeks to have this Court resolve on a class-wide basis, and proposes a basis for adjudicating class wide liability and relief that is unsupportable and contrary to the law.

As the California Supreme Court recently observed in the *Tobacco II* case, a plaintiff under the UCL must establish that he suffered injury and lost money "as a result of" Defendants' wrongful conduct in order to have standing. The Supreme Court confirmed that the substantive elements of a UCL claim remain the same, and that a plaintiff must establish all the requisite elements to class certification. Thus, to state a UCL claim, Plaintiff must establish not only his actual reliance on the allegedly deceptive practices about which he complains, but also that his reliance was reasonable. Plaintiff is additionally required to establish that the class was "likely to be deceived" by the allegedly deceptive practices at issue.

Here, Plaintiff's own conduct demonstrates that he was not in fact, nor likely to be, deceived, and that he acted unreasonably and carelessly. Plaintiff ignored the numerous disclosures and notices he was provided and neglected to read in any meaningful fashion the bills which he claims "tricked" him. Further, because Plaintiff not once, but twice (out of four times), paid his premiums well after the allegedly deceptive "due date," Plaintiff knew that the only consequence for not paying by that "due date" was that he received a second bill requiring a

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26ᵀᴴ FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

1  minimum payment of two (versus one) month's premium to renew his policy. (*See* Declaration of

2  Carol Mattox ("Mattox Dec."), ¶¶ 8, 12, Exs. E, I.)[1]

3       Plaintiff's conduct renders him an inadequate representative and demonstrates that his

4  claims are not typical of the class he seeks to represent.  His actions further establish that common

5  issues do not exist or predominate.  Further, Plaintiff has presented no valid basis to support his

6  assertion that his claims can be adjudicated on a class-wide basis.  The conclusory allegations of

7  his "linguist" expert, Geoffrey Nunberg, based on a narrow and facially suspect subset of

8  information and documentation, and his lack of knowledge of the standards under the UCL,

9  provide no basis on which to certify the present action.  (*See* Defendants' Objections to

10  Declarations of Jerald Udinsky and Geoffrey Nunberg) ("Defs. Obj."), pp 2, 3, 7-11, filed

11  herewith.)

12       In contrast, Defendants submit the analyses and expert opinion of Avram Tucker.  Mr.

13  Tucker's analysis of the actual responses by Plaintiff and other insureds to Defendants' initial

14  renewal bills supports the conclusion that the allegedly deceptive "due date" bills were neither

15  deceptive nor likely to deceive: 80% of the allegedly deceptive bills were *not* paid in full by the

16  allegedly deceptive "due date" and 70% of Defendants' insureds *never* paid an allegedly deceptive

17  bill in full by the early "due date."  (*See* Declaration of Avram Tucker, ("Tucker Dec.") filed

18  herewith, ¶¶ 10, 12, Exhs. D, F.)  Further, the evidence shows that insureds knowingly and

19  voluntarily pay their premiums in full a month or more before the renewal policy effective date.

20  (*Id.*, ¶¶ 11-14, Exs. E-I.)  Under these circumstances, it is clear that class certification is not

21  appropriate.

22       Plaintiff's attempt to explain how the monetary relief he seeks can be determined on a

23  class-wide basis only cements the conclusion that Plaintiff's class certification motion must be

24  denied.  The methodology undertaken by Plaintiff's "expert," Jerald Udinsky, demonstrates that

---

26  [1] Defendants believe Plaintiff's conduct defeats his standing and that his claims fail for this and other
27  reasons as a matter of law.  As such, Defendants have pending a motion for summary judgment which
is set for hearing February 1, 2010. [Docket nos. 206-208.]

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

Case No. C 06-03778 JW (RS)         DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

1   Plaintiff seeks to recover his and the purported class' *damages* ("lost interest"), not restitution, but

2   as a matter of law, damages are not recoverable under Plaintiff's claims.  In all events, by Mr.

3   Udinsky's own admission, his opinions are based on assumptions that have no basis in reality and

4   hence, should not be considered by this Court. (*See* Defs. Obj. pp. 2, 4-7.)  Equally fatal to

5   Plaintiff's motion is the indisputable fact that by asking this Court to order Defendants to refund

6   millions of dollars to certain of its insureds, Plaintiff is asking this Court to effectively set new

7   rates for him and these other insureds that are lower than the rates filed and approved by the

8   California Department of Insurance ("CDI").  California law prohibits such rate discrimination and

9   judicial rate-making.

10          In sum, Plaintiff's motion for certification suffers from multiple defects which mandate that

11   Plaintiff's motion be denied.

## II.   STATEMENT OF FACTS AND PROCEDURAL HISTORY

13          Defendants issue motor vehicle policies for six-month periods.  (Mattox Dec., ¶ 2.)  In

14   California, although Defendants could demand payment of the full six months premium in order to

15   renew the policy, Defendants require only that an insured pay at least two months worth of

16   premium on or before the renewal policy effective date in order to renew the policy.  (*Id.*)  Prior to

17   September 2003, Defendants sent their California insureds a single renewal bill approximately

18   twenty days before the renewal policy effective date that required the payment of at least two

19   months premium on or before the renewal policy effective date in order to renew the policy . (*Id.*

20   at ¶ 3.)

21          In September 2003, in an effort to provide their California insureds greater flexibility and

22   lessen the burden of the renewal down payment requirement, Defendants changed their renewal

23   billing schedule to provide insureds the opportunity to make the minimum two months worth of

24   premium payment in two equal monthly installments.  Under the new advanced renewal billing

25   ("ARB") schedule, Defendants added a new bill to the billing cycle.  This new bill was sent

26   approximately 50 days prior to the renewal policy effective date, and reflected a minimum amount

27   due of *one* month (versus two months) of premium to be paid a month prior to the renewal policy

28   effective date.  If the minimum payment was made under the initial renewal bill, a second bill was

- 3 -

1   issued requiring the insured to make a payment of only one month of premium.  If, on the other

2   hand, the insured did not send any payment in response to the initial renewal bill, the second

3   renewal bill was sent requiring payment of at least two month's premiums by the renewal policy

4   effective date.  (Mattox Dec., ¶ 3.)  In other words, Defendants' ARB schedule gave insureds the

5   *option* to spread their premium payments equally over six months.

6          Plaintiff and Defendants' insureds were notified of the revised renewal billing schedule and

7   new payment option in an "Important Notice."  (*Id.* at ¶¶ 4, 16.)  This Important Notice advised

8   insureds of the upcoming billing change and that they would receive an additional bill which would

9   provide the option of paying in equal monthly installments, with one installment due a month

10  earlier than before.  The Important Notice further informed insureds that their first renewal bill

11  would be accompanied by a brochure providing detailed information about the new billing

12  schedule.  Insureds were further advised that their actual bill would include important information

13  about their payment schedule and that they should read the bill "carefully."  Finally, insureds were

14  advised to contact their Allstate representative if they had any questions.  Plaintiff was then and is

15  now dealing with the same Allstate agent.  (*Id.* at ¶ 4, Ex. A.)

16  The First Allegedly Deceptive "Due Date" Renewal Bill

17         Plaintiff was sent the first renewal bill under the ARB program in March 2004 for his

18  renewal policy period, April 24, 2004 to October 24, 2004.  (*Id.* at ¶ 6, Ex. C.)  As explained in the

19  Important Notice, the bill was accompanied by a brochure explaining the new bill and schedule.

20  Entitled, "We've changed our billing schedule," the brochure stated:

21         We want to make your life a little easier.

22         That's why we've created a new billing schedule for your auto insurance
           premium.  Starting with this renewal of your policy, you may no longer have
23         to pay a two-month down payment in one lump sum.  We've changed your
           billing schedule so you can pay approximately the same amount every
24         month.

25         Here's how it works.

26         Under the new billing schedule, your renewal Policy Declarations and first
           renewal bill will now be sent to you approximately three weeks earlier.  This
27         changes means that, instead of sending one renewal bill requiring payment
           of at least two months of premiums prior to your renewal policy effective
28         date, you will now be sent two bills prior to that date.  These bills will each

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

require payment of at least one month of premium.

The first payment will be due approximately one month prior to the effective date of your renewal policy, and the second will be due by the renewal policy effective date and time. If for some reason you don't pay the first bill, the second renewal bill Minimum Amount Due will reflect at least two months of premium. Please note that in all cases, we must receive at least the Minimum Amount Due by the renewal effective date and time in order for your renewal policy to go into effect.

The advantage of this change is that each month you will be billed approximately the same amount. Your bills will be due on the same date every month. (*Id.* at ¶ 5, Ex. B.)

Consistent with the brochure, the "due date" on the enclosed initial renewal bill was March 24, 2004, one month prior to the renewal policy effective date. However, as described in the brochure and under the "Important Information" section of the bill on page two, Plaintiff was advised:

If for some reason you don't pay this first bill, the second renewal bill Minimum Amount Due will reflect at least two months of premium. Please note that in all cases we must receive at least the Minimum Amount Due on the second renewal bill by the renewal effective date and time in order for your renewal policy to go into effect.

(*Id.* at ¶ 6, Ex. C.) On March 20, 2004, Allstate Insurance received Plaintiff's payment of $62.15, the full amount of premium due for this policy period. (*Id.* at ¶ 7.)

The Second Allegedly Deceptive "Due Date" Renewal Bill

In early September 2004, Allstate Insurance sent Plaintiff an initial renewal bill for his next renewal policy period, October 24, 2004 to April 24, 2005. This bill was virtually identical to the bill he received for the prior policy period, except his full premium for this policy period was significantly greater and the "due date" on this bill was September 24, 2004. *Plaintiff did not make any payment by the September 24, 2004 "due date"* so Plaintiff was sent a second renewal bill. Plaintiff made a premium payment 10 days *after* the allegedly deceptive "due date." (Mattox Dec., ¶ 8, Exs. D, E.)

The Third Allegedly Deceptive "Due Date" Bill

In early March 2005, Allstate Insurance sent Plaintiff the initial renewal bill for his next six-month coverage period, April 24, 2005 to October 24, 2005. (*Id.* at ¶ 9.) While the *format* of this bill had been changed, it functioned the same as initial renewal bills Plaintiff had previously

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

Case No. C 06-03778 JW (RS)

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

received – the bill offered Plaintiff the option of paying the minimum two month premium in equal

monthly installments, with one month of premium paid 30 days prior to the renewal policy

effective date.  Significantly, the renewal policy period and various payment options were even

more prominently displayed on this redesigned bill.  Specifically, *the first page* of the redesigned

bill set out the following message in distinct large font:

> If you choose to pay your policy in full, please make sure we receive
> $367.86 by April 24, 2005.

(*Id.* at ¶ 9, Ex. F.)  A brochure explaining the redesigned bill format accompanied the March 2005

initial renewal bill.  Notably, this brochure directed the readers not only to the "due date" section of

the bill, but also to that section of the bill where the above payment option was described.  (*Id.* at ¶

10, Ex. G.)  On March 24, 2005, Allstate received a payment from Plaintiff in the amount of

$367.86, the full amount of his renewal premium.  (*Id.* at ¶ 11.)

The Fourth Allegedly Deceptive "Due Date" Renewal Bill

     In early September 2005, Allstate Insurance sent Plaintiff the initial renewal bill for his

policy period October 24, 2005 to April 24, 2006.  (*Id.* at ¶ 12, Ex. H.)  This bill had a "due date"

of September 24, 2005.  *Plaintiff made no payment in response to this bill.*  Accordingly, Allstate

Insurance sent a second renewal bill requiring payment of at least two months of premium.  (*Id.* at

¶ 12, Ex. I.)  On October 21, 2005, Allstate Insurance received from Plaintiff $367.86, the full

amount of his renewal premium for this policy period.  (*Id.* at ¶ 12)

The Admitted End Of The Allegedly Deceptive "Due Date" Bills

     In December 2005, Defendants put into use a new version of the initial renewal bill which

further clarified the payment options available to insureds.  Specifically, each premium payment

option was set forth in the initial renewal bill, including the option to pay in equal monthly

installments with the first installment paid 30 days prior to the renewal policy effective date.

However, there was no "due date" noted on the bill.  (*Id.*, ¶ 13, Ex. J.)  Instead, the options to pay

in installments, pay in full, or pay nothing in response to the initial bill, were separately laid out.

Plaintiff concedes this version of the initial renewal bill is not deceptive.  (Mot. at 8:11-15; Miletak

Depo. Tr. 87:16-89:4, Ex. A to Athanacio Dec.)  Even though the revision removed the allegedly

1    deceptive "due date," many insureds continued to pay (or began paying) their premiums in full 30

2    days or more in advance of the renewal policy effective date.  (Tucker Dec., ¶¶ 13, 14, Ex. H, I.)

3    Plaintiff's Present Action

4            In April 2006, over a year after the last "early" payment Plaintiff claims he was "tricked"

5    into making, Plaintiff and his mother, Filka Miletak, filed this action against Allstate Insurance in

6    state court, asserting causes of action for breach of contract, breach of implied covenant of good

7    faith and fair dealing, breach of fiduciary duty, fraud, constructive fraud, negligent

8    misrepresentation, violation of Section 17200, and unjust enrichment.

9            Allstate Insurance removed the case to this Court and thereafter filed a motion to dismiss.

10   Allstate Insurance's motion noted that the allegedly deceptive renewal bill about which Plaintiffs

11   complained was Allstate Insurance's offer of renewal and simply presented insureds with various

12   payment options, including the option to pay the requisite minimum down payment of at least two

13   months of premium, in two equal installments (versus one lump sum as previously required.)  This

14   Court agreed:

15           The Statement, which is three pages long, is Plaintiff Vlaho Miletak's
             Statement for the policy period April 24, 2005 to October 24, 2005.
16           A shaded area at the top states, "Your Bill at a Glance."  The shaded area is
             divided into three components.  The leftmost component states, "Due Date:
17           March 24, 2005 at 12:01 A.M."  The center component states, "To Pay in
             Full: $367.86."  The rightmost component states, "Minimum Amount Due:
18           $64.81." . . . Towards the middle of the page, as part of a section labels,
             "Ways to Pay/Billing Inquiries," the Statement states, "If you choose to pay
19           your policy in full, please make sure we receive $367.86 by April 24, 2005."
             Page two of the Statement provides, "If for some reason you don't pay this
20           first bill, the second renewal bill Minimum Amount Due will reflect at least
             two months of premium.  Please note that in all cases we must receive at
21           least the Minimum Amount Due on the second renewal bill by the renewal
             effective date and time in order for your renewal policy to go into effect."
22

23   Feb. 8, 2007 Order, 3:15-4:6 [Docket no. 42].

24           This Court granted Allstate Insurance's motion to dismiss with partial leave to amend,

25   recognizing that "[t]he [renewal billing statement] represents an offer by Allstate to contract for an

26   upcoming six-month period. . . . Allstate thus makes three contemporaneous offers to its renewing

27   insureds. "*Id.* at 5:4-18.  Significantly, the Court held that the payment option which allowed for

28   the insured to renew his policy by making partial payments over several months was legally

Case No. C 06-03778 JW (RS)                                    DEFENDANTS' OPPOSITION TO PLAINTIFF'S
                                                                  MOTION FOR CLASS CERTIFICATION

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

1    authorized by the Cal. Ins. Code:

2          An insurer is entitled to the full payment on the first day of policy coverage.
           Cal. Ins. Code § 480. As consideration for instead agreeing to accept
3          payment over several months, then, the insurer may require the insured to
           begin installment payments in advance of the policy's coverage start date,
4          may assess an installment fee, or both. Allstate's Statements indicate that
           Allstate has elected to require both. *Id.* at 5:23-25, n.3.

5

6          Based on its review of the billing statement attached to the complaint (which Plaintiff did

7    not advise was actually the third of four allegedly deceptive "due date" bills Plaintiff received), this

8    Court concluded, "Plaintiffs have not identified a false representation in Allstate's Statements. The

9    Statements explicitly provide, 'If you choose to pay your policy in full, please make sure we

10   receive [full amount] by [policy start date].' (FAC, Ex. A.) The Statements' earlier deadlines

11   apply only to insureds wishing to utilize Allstate's installment billing plan. Since Allstate's

12   Statements do not contain an actual misrepresentation, Plaintiffs cannot state a cognizable claim for

13   fraud." *Id.* at 7:13-17.

14         Consequentially, this Court dismissed with prejudice Plaintiffs' fraud and contract based

15   claims, and claim for breach of fiduciary duty. Plaintiffs were granted leave to amend their UCL

16   and unjust enrichment claims. Further motion practice resulted in Plaintiff's mother being

17   dismissed with prejudice as she had no ties whatsoever to Allstate.

18         On June 2, 2008, Plaintiff moved for class certification. At Plaintiff's request, his motion

19   was withdrawn. Plaintiff thereafter filed his Fourth Amended Complaint against Defendants.

20   **III.   THE APPLICABLE LEGAL STANDARDS: RULE 23 AND PLAINTIFF'S BURDEN**

21         As the party seeking certification, Plaintiff bears the burden of demonstrating that all of the

22   prerequisites to class certification under Rule 23(a) (numerosity, typicality, commonality, and

23   adequacy) and at least one element of Rule 23(b) are met. *Hanon v. Dataproducts Corp.*, 976 F.2d

24   497, 508 (9th Cir. 1992). Failure to prove any one of Rule 23's requirements destroys the alleged

25   class action. *Schwartz v. Upper Deck Co.,* 183 F.R.D. 672, 675 (S.D. Cal. 1999). Here, Plaintiff

26   seeks certification under Rule 23(b)(3) which requires that he establish that "the questions of law

27   or fact common to class members predominate over any questions affecting only individual

28   members, and that a class action is superior to other available methods for fairly and efficiently

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA  94105-2708
(415) 882-5000

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

1    adjudicating the controversy."

2        District courts are to conduct a "rigorous analysis" to ensure the Rule 23 prerequisites are

3    met. *Hanon*, 976 F.2d at 509 (citation omitted). Indeed, because the class action device implicates

4    fundamental due process rights of defendants and absent putative class members, a full evidentiary

5    basis and legal analysis for each of the class certification prerequisites is "indispensable." *Gen.*

6    *Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 161 (1982). Thus, while it said that a court

7    generally is bound to take the substantive allegations of the complaint as true, the Court may look

8    beyond the pleadings to determine whether the requirements of Rule 23 have been met. *Id.* at 160.

9    In fact, "courts are not only at liberty to but must consider evidence which goes to the requirements

10   of Rule 23 [at the class certification stage] even [if] the evidence may also relate to the underlying

11   merits of the case." *In re Juniper Networks, Inc.*, --- F.R.D. ---, 2009 WL 3353321, at *2 (N.D.

12   Cal. Oct. 16, 2009) (citation omitted).

13       "At the class certification stage, courts employ 'a lower Daubert standard' to analyze the

14   admissibility of expert testimony." *In re First Am. Corp. Erisa Litig.*, 2009 U.S. Dist. LEXIS

15   49141, *2 (C.D. Cal. 2009). "Although this standard is more lenient, the Court must ensure that the

16   basis of the expert opinion is not so flawed that it would be inadmissible as a matter of law." *Id. at*

17   *2-*3 (citation omitted.). A court should not "uncritically accept all expert evidence that is offered

18   in support of, or against, class certification." *Dukes v. Wal-Mart*, 222 F.R.D. 189, 191 (N.D. Cal.

19   2004).

20   **IV.   PLAINTIFF'S ERRONEOUS LEGAL ASSERTIONS DEFEAT HIS CLASS**
         **CERTIFICATION MOTION.**
21

22       Plaintiff's class certification motion is predicated on this Court accepting certain legal

23   principles: (1) There can be only one "actual" due date for the payment of any renewal premium,

24   namely the renewal policy effective date; and (2) the purported "restitution" of what amounts to a

25   return of a portion of certain insureds' premiums is appropriate. Plaintiff's legal propositions are

26   incorrect as a matter of law and fatal to his present motion.

27       **A.    California's Extensive Regulation of Insurance And This Court's Prior Rulings**
               **Preclude Certification of Plaintiff's Claims.**
28

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

1.   **The CDI's Oversight And Regulation of Insurers' Setting of Rates.**

California has adopted a comprehensive regulatory system governing insurance generally, and motor vehicle insurance in particular.[2]  Premiums charged by insurers are approved by the Commissioner of the CDI and cannot be "excessive, inadequate (or) unfairly discriminatory." Ins. Code § 1861.05(a).  By law, the Commissioner is required to "consider whether the rate mathematically reflects the insurance company's *investment income*." *Id.* (emphasis added.) As such, to the extent any income is realized as a result of receiving any premium "early" *i.e.,* in advance of the policy period, the income or interest earned on those premiums is taken into consideration when the Commissioner approves an insurer's rate.  All things being equal, the more assets an insurer has, the greater the investment income, and the lower the rate the Commissioner will approve. 10 Cal. Code Regs. ("CCR") §§ 2644.2-2644.3, 2644.19-2644.20.

California insurers are severely limited in the factors they can take into consideration in setting a particular insurance rate. *See* 10 CCR §§ 2632.4, 2632.5.  Automobile insurers must file a class plan application, setting forth the rating factors used to determine each policyholder's premium. *See* 10 CCR § 2632.1 *et seq.*  A carrier can use only those rating factors approved by the Commissioner.  Ins. Code § 1861.02(a), 10 CCR §§ 2632.4, 2632.10.  Insurers may not take into account how or when insureds pay their premiums in setting the rate to be charged.  Discrimination in rates based on whether an insured pays in full, early or in installments is not permitted.  An insurer cannot charge (or collect) less in premiums because an insured pays early or pays in full. The premium an insured pays for motor vehicle coverage in California must be the same whether the insured pays in full or in installments, and irrespective of whether that premium is paid one day before the policy renews or thirty. *Id.*

Ins. Code §§ 1860.1 and 1860.2 "provide exclusive original jurisdiction over issues relating to [insurance] ratemaking to the [Insurance C]ommissioner." *Walker v. Allstate Indem. Co.*, 77 Cal.

---

[2]  A more detailed discussion of California's extensive regulation of insurance and rate setting is set forth in Defendants' Summary Judgment Motion.  [Docket Nos. 206-208]

Case No. C 06-03778 JW (RS)

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

App. 4th 750, 755 (2000).  Once the Commissioner approves a rate, "any person aggrieved by any rate charged" may seek review of the continued use of that rate before the Commissioner. 77 Cal. App. 4th at 753 (citing Ins. Code §§ 1861.10, 1861.05(a)).  When the statutorily mandated ratemaking process "has run its course, the insurers must charge the approved rate and cannot be held civilly liable for so doing." *Id.* at 756.

In *Walker*, the court considered whether plaintiffs could maintain an action for violation of the UCL, unjust enrichment, and fraud against automobile insurers based upon claims that they were entitled to disgorge allegedly excessive premiums. *Id.* at 752.  The *Walker* court refused to permit plaintiffs' action to proceed.  Significantly, the *Walker* court noted the analogous "filed rate doctrine" supported dismissal of plaintiffs' claims. *Id.* at 757, n.4.

Under the filed rate doctrine, a plaintiff is barred from prosecuting a civil action challenging rates filed by a regulated entity with its regulatory agency. *AT & T v. Central Office Tel., Inc.*, 524 U.S. 214, 222 (1998).  The purpose and effect of the filed rate doctrine was summarized in *Gallivan v. AT & T Corp.*, 124 Cal. App. 4th 1377, 1382 (2004).  Particularly relevant here, the *Gallivan* court noted: "In addition to barring suits challenging filed rates and suits seeking to enforce rates that differ from the filed rates, *the filed-rate doctrine also bars suits challenging services, billing or other practices when such challenges, if successful, would have the effect of changing the filed tariff.*" *Id.* at 1087 (emphasis added).

In *Day v. AT & T Corp.*, 63 Cal. App. 4th 325 (1998), plaintiffs brought suit under the UCL alleging that defendants failed to disclose how calls were charged (rounded up minutes) such that plaintiffs were deceived into purchasing phone cards.  Plaintiffs sought "disgorgement of all 'ill-gotten profits'" and argued that the filed rate doctrine posed no bar as they were not seeking a "rebate or refund" nor were they attacking the actual rate charged. *Id.* at 328, 336, 337.  Even though the court found that plaintiffs' allegations of deception sufficiently stated a UCL claim, the *Day* court concluded that plaintiffs' claims for monetary relief were barred as a matter of law.

In reaching this conclusion, the *Day* court noted the "two legitimate goals" furthered by the filed rate doctrine: "nondiscriminatory rate setting and agency autonomy in rate setting without court interference." *Id.* at 335.  Consistent with these goals, the court observed: "There is no question that

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

- 11 -

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

1    the doctrine has been repeatedly used to bar myriad claims seeking monetary recovery." *Id.* at 331.

2    The *Day* court held that a claim seeking monetary relief which "has the ultimate effect" of seeking a

3    different (and hence) discriminatory rate is "prohibited." *Id.* at 336.  The court rejected plaintiffs'

4    argument that seeking only defendants' "profits" would be proper: "*Any amount taken away from*

5    *[defendant]...would amount to a rebate.  This, as we have seen, is not permitted.*"  *Id.* at 339

6    (emphasis added.)

7         *Day* is directly on point and compels the conclusion that Plaintiff's class certification motion

8    must be denied.  As in *Day*, Plaintiff seeks to certify a class to obtain "restitution" from Defendants

9    of "ill-gotten gains" supposedly obtained through deceptive practices. (Mot. at 5:7-14, 8:26-27.)[3]

10   Like *Day*, Plaintiff has only paid the rate approved by the agency charged with regulating and

11   approving that rate (here the CDI).  As was true in *Day*, "any amounts taken" from Defendants would

12   amount to a discriminatory premium rebate.  As the *Day* court held, such a rebate is not permitted.

13        Simply stated, Plaintiff cannot, under the guise of a UCL claim, seek a premium rebate

14   because he claims he and the class did not really mean to pay premiums in full "early."  Plaintiff

15   cannot as a matter of law obtain the class relief he seeks and class certification should be denied.

16        **2.     Offers of Renewal With Differing Payment Options Are Permissible.**

17        Plaintiff repeatedly states in his motion that the "due date" on the renewal bills are not the

18   "actual" due dates and hence are deceptive. (Mot. at 2:14-3:3, 5:3-7, 7:9-8:10.)  He argues that the

19   only date an insurer can ask for any payment of renewal premiums is the renewal policy effective

20   date.  Plaintiff's "linguist" expert assumes this to be true and opines that how and why insureds

21   actually pay their renewal premiums is irrelevant.  (*See* Defs. Obj., pp. 2, 7-11.)  Plaintiff and his

22   "expert" are mistaken.

23        As this Court expressly recognized, under Cal. Ins. Code § 480, "[a]n insurer is entitled to

24   the full payment [of premiums] on the first day of coverage."  Consequently, this Court properly

25

26   [3] As noted herein Plaintiff's motion proposes that the Court award Plaintiff and the class their "lost
     interest", i.e., their damages, which are not recoverable.  However, no matter the calculation, Plaintiff
27   is seeking a premium rebate as that is the only money he or the class paid Defendants.

28

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

Case No. C 06-03778 JW (RS)                       DEFENDANTS' OPPOSITION TO PLAINTIFF'S
                                                    MOTION FOR CLASS CERTIFICATION

1    concluded that "[a]s consideration for instead agreeing to accept payment over several months,

2    then, the insurer may require the insured to begin installment payments in advance of the policy's

3    coverage start date." Feb 8 Order, p. 5, n. 3.

4        Ins. Code § 663(a), specifically applicable to motor vehicle insurance renewal offers, fully

5    supports this Court's finding. Section 663(a) provides in relevant part:

6        (a)    Before policy expiration, an insurer shall deliver to or mail to the named
               insured, at the address shown on the policy, one of the following:
7

8            (1)    *At least* 20 days before expiration, a written or verbal offer of
                   renewal of the policy, *contingent upon payment of premium as stated in
                   the offer.* (emphasis added.)
9

10       Consequently, Plaintiff's claim that there is and can be only one "actual" due date for the

11   payment of any renewal premiums, and that the "due date" in Defendants' initial renewal bills is

12   not the "actual" due date, is simply wrong. Plaintiff's class certification motion based on these

13   incorrect legal principles should be denied.

14   **V.    PLAINTIFF HAS NOT ESTABLISHED THE PREREQUISITES TO CLASS
           CERTIFICATION**

15       **A.    Plaintiff Has Failed To Show The "Typicality" and "Adequacy" Requirements
               Are Met.**
16

17           **1.    Plaintiff's Conduct Renders Him An Unsuitable Representative.**

18       The typicality requirement under Rule 23 requires Plaintiff to show that "other members

19   have the same or similar injury, . . . the action is based on conduct which is not unique to named

20   plaintiffs, and . . . other class members have been injured by the same course of conduct." *Hanon*,

21   976 F.2d at 508. If Plaintiff is not a member of the class he seeks to represent, his claims are not

22   typical of the class claims, and he cannot be an adequate class representative. *See Equal Employ.

23   Opportunity Comm'n v. General Tel. Co. Of Northwest, Inc.*, 599 F.2d 322 (9th Cir. 1979).

24       Critically, but ignored by Plaintiff, well-settled law holds that where a class representative

25   is subject to unique defenses, typicality is not satisfied. "[A] named plaintiff's motion for class

26   certification should not be granted if 'there is a danger that absent class members will suffer if their

27   representative is preoccupied with defenses unique to it.'" *Hanon,* 976 F.2d at 508 (quotations

28   omitted). A class should not be certified where "the defendant may devote 'great effort toward the

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

1    arguable defenses that arise from [plaintiff's situation]." *Rolex Employees Retirement Trust v.*

2    *Mentor Graphics Corp.,* 136 F.R.D. 658, 664 (D. Or. 1991). In such a case, "'there is a substantial

3    likelihood that if [plaintiff] is named as the representative of the proposed class, defenses unique to

4    [him] could become the focus of the litigation to the detriment of the class.'" *Id.*

5        In his motion, Plaintiff asserts that because he was sent what he contends were allegedly

6    deceptive renewal bills and "paid in full in advance like the other members of the class," the

7    typicality requirement is met. He argues that it is irrelevant that he only "glanced" at his bills

8    (looking only at the "due date" and "amount to pay"), consciously chose not read *any* language on

9    the bill explaining that he need not pay in full by that date, *and entirely failed to read* the brochure

10   and "Important Notice" he was sent announcing and explaining in detail the new renewal billing

11   schedule and payment options. Likewise, Plaintiff asserts it is of no consequence that while he

12   claims four bills he received deceptively stated an early "due date," for two of the four bills,

13   Plaintiff knowingly paid *well after* the allegedly deceptive "due date." In essence, Plaintiff argues

14   that because "reliance" by class members is not an element of a UCL claim, his behavior has no

15   bearing on this litigation. Plaintiff could not be more wrong.[4]

16       Under the Supreme Court recent ruling in *In Re Tobacco Cases II,* 46 Cal. 4th 298 (2009)

17   ("*Tobacco II*"), a plaintiff must (1) establish his "actual reliance" (which requires a showing that

18   the "defendant's misrepresentation or nondisclosure was an 'immediate cause' of his injury

19   producing conduct'" and that Defendants' insureds were "likely to be deceived." *Id.* at 312.

20   Significantly, the *Tobacco II* Court did not suggest that the other requirements to class certification

21   had been altered or disposed of. To the contrary, the Court's holding was clear:

22           We therefore conclude that Proposition 64 was not intended to, and does not,
             impose section 17204's standing requirements on absent class members in a
23           UCL class action *where class requirements have otherwise been found to
             exist. Id.* at 324 (emphasis added).

24

25   _____

26   [4] Plaintiff makes no argument and cites to no case suggesting that he has satisfied the typicality
     requirement (or any other requirements) for certification of his claim for "unjust enrichment." He
27   does not, as he cannot. *See Deitz v. Comcast,* 2007 WL 2015440 (N.D. Cal 2007) (court denying
     certification of "unjust enrichment" claim.)

28

Case No. C 06-03778 JW (RS)                                      DEFENDANTS' OPPOSITION TO PLAINTIFF'S
                                                                    MOTION FOR CLASS CERTIFICATION

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

1    UCL claims are governed by the "reasonable consumer" standard. *Freeman v. Time Inc.*,

2    68 F.3d 285, 289 (9th Cir. 1995) ("[T]he false or misleading advertising and unfair business

3    practices claim must be evaluated from the vantage of a reasonable consumer.") (citation omitted).

4    "'[L]ikely to deceive'... indicates that the [allegedly deceptive communication] is such that it is

5    *probable* that a *significant portion* of the...*targeted consumers, acting reasonably in the*

6    *circumstances*, could be misled." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508

7    (2003) (emphasis added). A reasonable member of the public cannot be deceived where the

8    communication contains qualifying language that is neither hidden nor unreasonably small. *See*

9    *Freeman*, 68 F.3d at 289-90. A clearly disclosed term or practice is not likely to deceive a

10   consumer. *CLRB Hanson Indus., LLC v. Google, Inc.,* 2008 WL 2079200, *5 (N.D. Cal. May 14,

11   2008).

12       Here, Plaintiff's claims are not "typical" of the putative class. Indisputably, on as many

13   occasions as not, Plaintiff did not pay anything in response to the allegedly deceptive bills. Hence,

14   his conduct demonstrates he was not "deceived" by the alleged deceptive "due date" into paying

15   "early." Indeed, Plaintiff was on notice that the only consequence of not paying the allegedly

16   deceptive initial "due date" bills was that he would be sent a second bill requiring a minimum of two

17   months premium to renew. (Mattox Dec., ¶ 8, 12, Exs. D, I.) Further, Plaintiff's cannot seriously

18   suggest a reasonable insured would, like him, deliberately choose not to read *any* of policy

19   documents, "Important Notices," informational brochures or actual bills which detailed his

20   payment options.[5] Plaintiff's admission that he did not read *any* of his policy documents, materials

21   and information he was provided compels a finding that Plaintiff's claims are not typical of the

22   class. *See Caro v. Procter & Gamble Co.,* 18 Cal. App. 4th 664, 665 (1993) (plaintiff not "typical"

23   where he admitted he read only a portion of the allegedly deceptive material.) Indeed, in *McKinnis*

24

25   [5] In fact, under California law, an insured will not be permitted to deliberately keep himself ignorant
     of the terms of his insurance policy by not reading his policy. *See Hackethal v. Nat'l Casualty Co.*,
26   189 Cal. App. 3d 1102, 1112 (1987) ("the receipt of a policy and its acceptance by the insured
     without an objection binds the insured...and he cannot thereafter complain that he did not read it or
27   know its terms. It is a duty of the insured to read his policy.")

28

Case No. C 06-03778 JW (RS)                                    DEFENDANTS' OPPOSITION TO PLAINTIFF'S
                                                                  MOTION FOR CLASS CERTIFICATION

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

1   *v. General Mills, Inc.,* 2007 WL 4762172, *2 (C.D. Cal. Sept. 18, 2007), *a case cited by Plaintiff*

2   (Mot. P. 3 n.3.), the court *dismissed* a UCL claim where, despite repeated allegedly deceptive

3   prominent statements and images (that products contained real fruit and fruit juices), the court

4   concluded the UCL claim failed as a matter of law because the plaintiff failed to read the ingredient

5   list ("fine print," according to Plaintiff) which disclosed the true nature of the product (no fruit or

6   juice whatsoever.)

7       *Endres v. Wells Fargo Bank*, 2008 U.S. Dist. LEXIS 12159 (N.D. Cal. Feb. 6, 2008), is

8   particularly instructive. In *Endres*, plaintiffs brought claims under the UCL seeking "restitution

9   and disgorgement of all profits gained" as a result of defendant's collecting allegedly improper

10   credit card fees. *Id.* at * 2. Plaintiffs sought certification based upon the alleged failure to

11   adequately disclose the fees. Wells Fargo argued class certification was not appropriate on several

12   grounds, including that plaintiff's claims were not typical since there were issues regarding what

13   plaintiffs actually knew and/or read. The *Endres* court agreed, finding that the named plaintiffs

14   "would be subject to unique and atypical defenses" and hence, the typicality requirement to class

15   certification was lacking. *Id.* at *16. *See also Deitz v. Comcast,* 2007 WL 2015440 (N.D. Cal

16   2007) (court denying certification where issue of plaintiff's reliance relevant, and plaintiff failed to

17   read defendants' bills and notice.)[6]

18       A similar result was reached in *Jordan v. Paul Financial, LLC*, 2009 U.S. Dist. LEXIS

19   7592 (N.D. Cal. Jan. 27, 2009). In *Jordan*, plaintiff brought a UCL claim, alleging defendants

20   "marketed and advertised to the general public through brochures, flyers and other substantively

21   identical marketing material" deceptive information about loan rates and the risk of negative

22   amortization. *Id.* at *16. In opposing class certification, defendants noted that based on plaintiff's

23

24   ───────────────

25   [6] *Baghdasarian v. Amazon, Inc.*, 258 F.R.D. 383 (C.D. Cal. 2009), cited by Plaintiff, does not suggest a different result. In *Baghdasarian,* the court did not mention, let alone address the requirement that the named plaintiff not be subject to unique defenses. *Morgan v. AT & T Wireless Services, Inc.*, 177 Cal. App. 4th 1235 (2009), is likewise unavailing to Plaintiff as the issue of typicality was never before the court. Rather, the court was assessing only whether the UCL action should have been dismissed on demurrer.

26

27

28

Case No. C 06-03778 JW (RS)                    DEFENDANTS' OPPOSITION TO PLAINTIFF'S
                                               MOTION FOR CLASS CERTIFICATION

1   prior conduct (he had other prior loans) and "equivocal" testimony as to whether he actually read

2   the loan documents, the typicality requirement was lacking as plaintiff's claim would be subject to

3   unique defenses. *Id.* at *15. The court agreed, noting that it appeared that "the litigation will focus

4   on a defense unique to plaintiff." *Id.* at *17.

5         Defendants have currently pending their motion for summary judgment which contends that

6   because (among other reasons) Plaintiff's conduct demonstrates that he did not actually or

7   reasonably rely on Defendants' allegedly deceptive practices, he has no standing and his UCL

8   claim fails as a matter of law.  Defendants believe their summary judgment motion should be

9   granted.  However, whether granted or not, plainly, Defendants do now and if necessary, will

10   continue to "devote great effort" to defending themselves in this case based on Plaintiff's unique

11   conduct.  As such, Plaintiff's claims are not typical of the class and his class certification motion

12   should be denied.  *Alaska v. Suburban Propane Gas Corp.,* 123 F. 3d 1317, 1322 (9th Cir. 1997)

13   (denying class certification because class representatives were subject to unique defenses.)

14                **2.   Plaintiff Cannot Adequately Protect The Class' Interests.**

15         Rule 23(a)(4) requires the class representative to "fairly and adequately protect the

16   interests" of all members in the class.  Adequate representation "depends on the qualifications of

17   counsel for representatives, an absence of antagonism, a sharing of interests between

18   representatives and absentees, and the unlikelihood that the suit is collusive." *Crawford v. Honig*,

19   37 F. 3d 485, 487 (9th Cir. 1994).  Thus, courts examine the adequacy of both counsel and class

20   representative, who are each fiduciaries of the class.  *Id.*  "The fact that the court may have to

21   spend time at some future date assessing [the proposed class representative's] roles and action

22   makes [him] an inadequate representative." *Mazur v EBay, Inc.*, 257 F.R.D. 563, 569 (N.D. Cal.

23   2009).

24         Here, Plaintiff purposely ignored the myriad disclosures regarding his renewal bills (and the

25   bills themselves), and paid his renewal premiums in a fashion inconsistent with actual deception.

26   Plaintiff's conduct is inconsistent with a finding that the "due date" bills actually deceived him or

27   "were likely to deceive" the reasonable insured.  (*See* Tucker Dec., ¶¶ 8-15.)  As Plaintiff's conduct

28   creates significant issues for him and the class he seeks to represent, he is not an adequate

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

- 17 -

1   representative.

2       So, too, Plaintiff has failed to establish that his counsel, chosen for reasons that Plaintiff

3   refused to disclose, are capable of fairly and adequately representing the class.[7]  Other than cite to a

4   25 year old case in which one of Plaintiff's counsel was among others designated as class counsel,

5   and Plaintiff's counsel's vague and conclusory statement they are qualified, Plaintiff has presented

6   no information for this Court (or Defendants) to assess whether in fact, Plaintiff's counsel are

7   appropriate protectors of the class.  Plaintiff has failed to show that he will adequately protect the

8   class interests. His class certification motion should be denied.

9       **B.      Plaintiff Does Not Establish That Common Issues Exist Or Predominate.**

10      Rule 23(a) requires Plaintiff to demonstrate there are questions of law or fact common to

11  the class.  Fed. R. Civ. P. 23(a)(2). Rule 23 (b)(3) requires that "questions of law or fact common

12  to class members predominate over any questions affecting only individual members."  The

13  predominance test is "far more demanding" than the Rule 23(a) "commonality" requirement.

14  *Deitz,* 2007 WL 2015440 *6 (citations omitted).[8]  The question is whether the proposed class is

15  sufficiently cohesive to warrant adjudication by representation. *Brown v. Federal Express Corp.,*

16  249 F.R.D. 580, 583 (C.D. Cal. Feb. 26, 2008).

17      To determine whether common issues predominate, this Court must first examine the

18  substantive issues raised by Plaintiff and second inquire into the proof relevant to each issue. *Id.*

19  The Court should consider the "nature and range of proof necessary to establish those allegations"

20  when determining whether Plaintiff has met the Rule 23 prerequisites.  *In re Coordinated Pretrial*

21  *Proceedings in Petroleum Prods. Antitrust Litig.*, 691 F. 2d 1335, 1342 (9th Cir. 1982).  If the main

22

23  [7]  During Plaintiff's deposition, his counsel instructed him to not answer the most basic questions that
24  would reveal issues of the adequacy of representation and potential collusion.  Athanacio Decl., Ex.
    A, 99:7-21, 99:23 - 102:14. 111:16-112:18.

25  [8]  The Court in *Baghdasarian,* cited by Plaintiff, seems to have blurred the distinction between the
26  commonality and predominance requirements and failed to appreciate that the test for predominance
    is "far more demanding." 258 F.R.D. at 390 (court referring to its discussion of "commonality" and
27  noting that these common issues were "significant" to conclude common issues predominate.  The
    *Baghdasarian* court does not mention or analyze any individualized issues.

28

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26th FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

1   issues in a case require separate adjudication of each class member's individual claim, a Rule

2   23(b)(3) action is inappropriate. *Zinser v. Accufix Research Institute, Inc,,* 253 F. 3d 1180, 1189

3   (9th Cir. 2001) (common issues would not predominate, as "to determine causation and damages

4   … it is inescapable that many triable individualized issues may be presented").

5         Plaintiff concedes that the "Court's inquiry should be directed primarily toward the issue of

6   liability." (Mot. p. 20.)  The problem here is that Plaintiff improperly assumes a common issue

7   exists and misstates the standard by which liability under the UCL may be imposed.

8         Plaintiff contends that the mere receipt of Defendants' billing statements is sufficient to

9   create an issue "common" to all class members.  He argues that Defendants' "standardized

10  deceptive, confusing and misleading" renewal bills with a "Due Date" which was not really "the

11  *actual* due date" is sufficient, without more, to conclude common issues exist and predominate.

12  (Mot. p. 12.).  He argues, citing *Tobacco II,* that under the UCL, the focus is on Defendants'

13  conduct, not the class members' reliance or injury.  Plaintiff is correct that the focus is on

14  Defendants' conduct.  But it is for this very reason, that commonality is lacking in this case.

15        Here, Plaintiff would have this Court focus only on Defendants' sending of the allegedly

16  deceptive initial renewal bills.  Yet under the UCL, and focusing fairly upon Defendants' conduct,

17  the Court cannot ignore (as Plaintiff did and still does in his motion) the multitude of

18  communications and information Defendants provided explaining, clarifying and elaborating on

19  the initial "due date" renewal bill.  Plaintiff necessarily seeks to define the supposed common issue

20  too narrowly.  The common issue, if any, is not whether Defendants' initial renewal bills were

21  deceptive, but rather were Defendants' disclosures, *in their totality* deceptive.  Plaintiff narrowly

22  defines the "issue" because the issue of whether Defendants' *practices* were deceptive is one not

23  common to him since he ignored Defendants' repeated disclosures.  Commonality under Rule 23 is

24  therefore lacking.

25        Moreover, while under the UCL, Plaintiff need not establish class members' reliance, he

26  still must establish that Defendants' insureds were likely to be deceived.  Liability is not imposed

27  because something "might" be misleading (a standard relied upon by Plaintiff's expert, Mr.

28  Nunberg), but rather because it is "*probable* that a *significant* portion of the…*targeted consumers,*

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

- 19 -

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

1   *acting reasonably in the circumstances*, could be misled." *Lavie,* 105 Cal. App. 4th at 508.

2   (emphasis added).  Contrary to Plaintiff's suggestion (and espoused by Mr. Nunberg), it is critical

3   that the Court consider fully the communications and disclosures Defendants made.  *See Freeman,*

4   68 F.3d at 289-90; *McKinnis, supra,* 2007 WL 4762172, at *2; *CLRB Hanson Indus., LLC,* 2008

5   WL 2079200, at *5.

6          As reflected in the Tucker declaration, statistical data relative to the purported class, as well

7   as Plaintiff's own payment history, are is inconsistent with the notion that Defendants' initial

8   renewal bills were "likely to deceive" Defendants' insureds, or in fact deceived Plaintiff.  Out of

9   over three million allegedly deceptive "due date" bills, roughly 80% of the time the bills were not

10  paid in full by or before the allegedly deceptive "due date".  Yet the analysis does not stop there.

11  Evidence strongly suggests that even those insureds who did pay in full by the allegedly deceptive

12  "due date," quite likely did so for reasons unrelated to the allegedly deceptive "due date." (*See*

13  Tucker Dec., ¶¶ 13-15. Exhs. H, I.)  Hence, at a minimum, an individualized assessment of the

14  reasons behind the purported class' "early" payments is required.  As such, predominance is

15  lacking.

16         The recent case of *Cohen v. DIRECTV, Inc.*, 178 Cal. App. 4th 966 (2009), supports this

17  conclusion.  In *Cohen,* the plaintiff brought a purported UCL class action alleging that DIRECTV

18  disseminated false advertisements to induce him and the class to purchase more expensive high

19  definition services.  The trial court denied certification and the court of appeals affirmed.

20  Significantly, the court noted, "factual questions associated with their reliance on DIRECTV's

21  alleged false representations was a proper criterion for the court's consideration when examining

22  'commonality' in the context of the subscribers' motion for class certification, even after *Tobacco*

23  *II.*" *Id.*  Indeed, the *Cohen* court properly analyzed the *Tobacco II* court's holding with regard to

24  UCL standing and class certification issues:

25              "Standing, generally speaking, is a matter addressed to the trial court's
                jurisdiction because a plaintiff who lacks standing cannot state a valid cause
26              of action... Commonality, on the other hand, and in the context of the class
                certification issue, is a matter addressed to the practicalities and utilities of
27              litigating a class action in the trial court.  We see no language in *Tobacco II*
                which suggests to us that the Supreme Court intended...to dispatch with an
28              examination of commonality when addressing a motion for class
                certification.  On the contrary, the Supreme Court reiterated the

- 20 -

requirements for maintenance of a class action, including (1) an ascertainable class and (2) a 'community of interests' shared by the class members." *Id.* at 981.

Under a similar analysis, the court, in *Kaldenbach v. Mut. of Omaha Life Ins. Co.*, 178 Cal. App. 4th 830 (2009), concluded that class certification was inappropriate. The *Kaldenbach* court noted that questions as to "what materials, disclosures, representations, and explanations were given to any given purchaser" defeated certification. *Id.* at 842. Critically, the court noted: "These individualized issues go not to the injury suffered by a purchaser, *but to whether there was in fact an unfair business practice* by Mutual. Neither *Tobacco II* .... nor *Massachusetts Mut. [Life Ins. Co. v. Superior Court]* compel a different result. " *Id.* at 848 (citations omitted) (emphasis added.).

Here, Plaintiff claims that he and hundreds of thousands of insureds are entitled to "restitution" as he and all members of the class were "injured in the same manner" when they lost the "value" of their "advanced payments." (Mot. p. 20.) However, in seeking to recover millions, Plaintiff asks this Court to disregard the materials, disclosures and explanations given insureds because *he* knowingly ignored them all. Plaintiff further asks this Court to overlook the fact that 50% of the time, he made no payment by the allegedly deceptive "due date." As recognized in *Cohen* and *Kaldenbach*, these critical factual issues predominate over any supposed "common" issue and mandate denial of class certification.

*Plascencia v. Lending 1st Mortgage*, 2009 U.S. Dist. LEXIS 79585, relied upon by Plaintiff, does not suggest a contrary result. In *Plascenia*, plaintiffs brought fraud and UCL claims, among others, based upon what the court recognized could constitute material fraudulent omissions–the failure to disclose in loan documents that the loans were subject to negative amoritization, that the early low interest rate was in fact a "teaser" and other egregious omissions. *Id.* at *24-26. Not surprisingly, under these facts, the court concluded that both plaintiffs' and the class' reliance on the fraud, and that the class was "likely to be deceived" by these glaring omissions, could be proven with "generalized evidence." *Id.* at *32.

In stark contrast here, as this Court has already concluded, there are no material

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

1    misrepresentations or omissions.[9]  Rather, at most, the Court concluded based solely on Plaintiff's

2    complaint that it was conceivable that Plaintiff could show that the "due date" on the initial

3    renewal bill was "likely to deceive" insureds.  The actual facts of this case have developed

4    significantly and show that this case is a far cry from that presented in *Plascencia*.

5         More to the point, Plaintiff here has failed to set forth what "generalized evidence" could

6    legitimately establish that Defendants' insureds were "likely to be deceived".  Rather, he suggests

7    that Defendants' admitted the "due date" was false.  The evidence he cites, however, reflects no

8    such admission and certainly, does not in any way detract from the statistical evidence and well-

9    founded expert opinion Defendants' present with this opposition.[10]

10        Nor does the declaration from Plaintiff's "expert" Mr. Nunberg support a contrary

11   conclusion.  As discussed in Defendants' Objections, Mr. Nunberg's opinions are based upon

12

13   _____

     [9]     Virtually all of the cases Plaintiff relies upon involved either securities fraud, *In re THQ, Inc.*
14   *Sec. Litig.,* 2002 WL 1833145 (C.D. Cal. March 22, 2002); *Blackie v. Barrack*, 524 F. 2d 891 (9th
     Cir. 1975); *Freedman v. Louisiana-Pacific Corp.*, 922 F.Supp. 377 (D. Or. 1996); *Schneider v.*
15   *Traweek,* 1990 U.S. Dist. LEXIS 15596 (C.D. Cal. 1990); *In re MDC Holdings Sec. Litig.*, 754
     F.Supp. 785 (S.D. Cal. 1990); *In re United Energy Corp. Solar Power Modules Tax Shelter Inv. Sec.*
16   *Litig.*, 122 F.R.D. 251 (C.D. Cal. 1988); *Schwartz v. Harp*, 108 F.R.D. 279 (C.D. Cal. 1985); *In re*
     *Unioil Sec. Litig.*, 107 F.R.D. 615 (C.D. Cal. 1985); *In re Jackpot Enters. Sec. Litig.*, 1991 U.S. Dist.
17   LEXIS 16353 (D. Nev. 1991); *Schaefer v. Overland Express Family of Funds*, 169 F.R.D. 124 (S.D.
     Cal. 1996); *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909 (9th Cir. 1964); *Epstein v.*
18   *MCA,* 50 F.3d 644 (9th Cir. 1995); *In re Sugar Indus. Antitrust Litig.*, 1976 U.S. Dist. LEXIS 14955
     (N.D. Cal. 1976); or affirmative misrepresentations or material omissions, *Vasquez v. Superior Court*
19   *of San Joaquin County*, 4 Cal. 3d 800 (1971) (uniform misrepresentations); *Haley v. Medtronic, Inc.,*
     169 F.R.D. 643 (C.D. Cal. 1996) (product defect/uniform misrepresentation case); *In re American*
20   *Med. Sys.,* 75 F. 3d 1069 (6th Cir. 1996) (uniform misrepresentation case).  Indeed, while Plaintiff
     cites much authority without elaboration, several cases are simply inapposite to Plaintiff's various
21   arguments, *Anunziato v. eMachines, Inc.*, 402 F.Supp. 2d 1133 (C.D. Cal. 2005) (applying wrong
     reliance standard to UCL claim); *Lozano v. AT&T Wireless Services, Inc.*, 504 F.3d 718 (9th Cir.
22   2007) (reviewing finding on predominance of common issues for abuse of discretion); *Local Joint*
     *Executive Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152 (9th Cir.
23   2001) (involving severance claims by former employees); *New Directions Treatment Services v. City*
     *of Reading,* 490 F.3d 293 (3d Cir. 2007) (involving ADA claims); *Dechert v. Cadle Co.*, 333 F.3d
24   801 (7th Cir. 2003) (vacating class certification).

25   [10]    The June 2004 email upon which Plaintiff relies, in fact, is counter to Plaintiff's argument.  As
     the email indicates, the (unstated) initial renewal bill "works beautifully" for people who pay
26   monthly.  Moreover, that insureds are calling Allstate suggests that Defendants' disclosures were
     sufficient (insureds were encouraged to call with any questions) and evidences that these people who
27   contacted Allstate did not pay in full "early" and hence are not potential class members.

28

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

- 22 -

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

1    incomplete and incorrect factual and legal assumptions which undermine his opinions.  In contrast,

2    Plaintiff's own behavior and the evidence presented by Defendants' expert undercut Plaintiff's

3    suggestion that Defendants' liability can be adjudicated on a class-wide basis.

4         Indeed, the evidence showing that many insureds pay in full "early" without an allegedly

5    deceptive "due date" bill raises legitimate, individualized questions as to whether class members

6    voluntarily paid "early," and therefore are not entitled to restitution.  *See Buckland v. Threshold*

7    *Enterprises, Ltd.*, 155 Cal. App. 4th 798, 818 (2007) (recognizing the "fundamental principle that

8    volunteers are not entitled to restitution of benefits they confer");  *Western Gulf Oil Co. v. Title Ins.*

9    *& Trust Co.*, 92 Cal. App. 2d 257, 266 (1949) (payments voluntarily made with knowledge of the

10   facts cannot be recovered).  Defenses applicable to UCL claims include the "voluntary-payment

11   doctrine." *Endres*, *supra*, 2008 U.S. Dist. LEXIS 12159, at *31-32 (recognizing voluntary payment

12   as defense to UCL claim and denying certification on this additional basis); *see also Cortez v.*

13   *Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 179-81 (2000) (recognizing UCL claims

14   subject to equitable defenses).

15        Here, common issues do not predominate and class certification is not appropriate.

16   **C.      Plaintiff Has Not Established Class Treatment is Superior or Manageable.**

17        "A class action addressing the varied individual factual issues raised by [p]laintiffs is likely

18   to be unmanageable. Even where there is a common nucleus of facts regarding a defendant's

19   conduct, '[i]f each class member has to litigate numerous and substantial separate issues to

20   establish his or her right to recover individually, a class action is not superior." *Brown*, 249 F.R.D.

21   at 587 (citation omitted).  Courts are admonished to take a "close look" at the difficulties likely to

22   be encountered in the management of a class action.  *Amchem Prods, Inc. v. Windsor*, 521 U.S.

23   591, 614-17 (1997).  Where a class would include "non-harmed" members, the class is "both

24   imprecise and overbroad" and certification is not appropriate. *Mazur*, 257 F.R.D. at 567 (citation

25   omitted).

26        Here, Plaintiff's proposed class comprises California insureds who "received" a renewal

27   bill with a "due date" in advance of the renewal policy effective date and who "paid" Allstate

28   Insurance, Allstate Indemnity or Allstate Property & Casualty renewal premiums in full 30 days or

- 23 -

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

1   more before the date the renewal policy effective date.  (Mot. p. 2:6-11.)  This definition suffers

2   from numerous fundamental flaws.

3   　　　First, Plaintiff cannot sweep within the ambit of his purported class Allstate Indemnity (or

4   Allstate Property & Casualty) insureds.  Plaintiff has no standing to assert claims against entities

5   with whom Plaintiff was never insured and to whom he paid nothing.  *See Schulz v. Neovi Data*

6   *Corp.*, 152 Cal. App. 4th 86, 92 (2007) (no standing to pursue action against defendants where

7   plaintiff did not use their services).[11]

8   　　　Further, Plaintiff's definition assumes the reason insureds paid in full 30 days or more

9   before the renewal policy effective date was that they were deceived by the initial renewal "due

10   date" bill.  Yet, evidence shows that a significant number of insureds pay in full 30 days or more

11   before the renewal policy effective date without an allegedly deceptive "due date" on the bill.  At a

12   minimum, this shows that it would be manifestly unjust and wholly inappropriate to impose

13   liability and refund to certain insureds a portion of these fully earned premiums simply because

14   Plaintiff would have this Court assume insureds were likely to be deceived.

15   　　　As shown by Plaintiff's own conduct and that of other insureds, it is apparent that large

16   numbers of insureds (if not all), paid their premiums 30 days in advance of the renewal policy

17   effective date for reasons unrelated to any allegedly deceptive "due date" renewal bill.  As such, a

18   member-by-member inquiry makes restitution unsuitable for class treatment and the class

19   unmanageable as a whole.  *Fletcher v. ZLB Behring LLC*, 245 F.R.D. 328, 334 (N.D. Ill. 2006);

20   *Griffin v. Harris*, 83 F.R.D. 72, 75 (E.D. Pa. 1979) ("It is apparent to this court that the disparate

21   factual circumstances surrounding each class member would make the awarding of restitution on a

22   class basis totally unmanageable").

23

24   　　　―――――――――――――

25   [11]  Allstate Property & Casualty is not a defendant in this action, never issued the allegedly deceptive
    "due date" renewal bills, and Plaintiff cannot seek certification over this non-party.  Further, while
26   Plaintiff was and is insured by Allstate Insurance, he has never been insured by Allstate Indemnity.
    Mattox Dec., ¶ 16.  As such, Plaintiff cannot maintain a class action against Allstate Indemnity as
27   Plaintiff paid nothing to it and hence, it has nothing to "restore" by restitution.

28

Case No. C 06-03778 JW (RS)                                    DEFENDANTS' OPPOSITION TO PLAINTIFF'S
                                                              MOTION FOR CLASS CERTIFICATION

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26th FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

**D.     Plaintiff Has Presented No Argument For Class-Wide "Restitution".**

Plaintiff recognizes that his burden includes demonstrating how his claims for "restitution" can be adjudicated on a class-wide basis.  He asserts that once he establishes Defendants' "due date" bills were deceptive, "all that will remain is the purely mechanical act of computing the amount of restitution each Class member is entitled to.  This can be easily and mechanically done from Allstate's own computer-stored records which Allstate has for each class member.  (Mot., pp 21-22.)  In support of this bold statement, Plaintiff submits Mr. Udinsky's declarations.  But Mr. Udinsky's declarations disclose his proposed "mechanical" method for determining what the purported class is entitled to is invalid as a matter of law.

Mr. Udinsky does not articulate a method – mechanical or otherwise – for computing the amount of *restitution* to which each class member supposedly is entitled.  To the contrary, Mr. Udinsky ostensibly purports to calculate Plaintiff's and the class' alleged *damages,* specifically, "the "cumulative interest *lost by Allstate customers (insureds)* who paid their premiums in full, 30 days or more, in advance of the renewal policy effective date."  (Udinsky Dec., ¶ 4, emphasis added.)  As a matter of law, damages, *i.e.,* the amount allegedly lost by Plaintiff and the class, are not recoverable.  *Tobacco II*, 46 Cal. 4th at 312 (citation omitted).  Hence, Plaintiff has failed to present a legitimate method for calculating "restitution."

Equally fatal to Plaintiff's motion is that Mr. Udinsky admits his loss calculations have no basis in reality.  Taking the "investable income" that Defendants purportedly obtained from the deceptive "due date" payments (which is *total* amount of *premiums* paid in full and received 30 days in advance of the renewal policy effective date), Mr. Udinsky "assumes" (as he was told to do) that insureds could have earned a *7%* annual compound interest rate and that insureds "could have paid their premiums on a monthly basis."  Plaintiff has thus asked his expert to assume that but-for the allegedly deceptive "due date" bill, Plaintiff and all other insureds would have paid their premiums in monthly installments (without ever incurring a single installment fee) and obtained an interest rate nowhere available in the market at the time.  It goes without saying that these "assumptions" are sheer nonsense and Mr. Udinsky's "opinions" are inadmissible as a matter of law and cannot support class certification.  *See In re First Am. Corp.*, 2009 U.S. Dist. LEXIS 49141, at *2-*3.

- 25 -

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

1    **VI.   CONCLUSION**

2          For the reasons stated above, Plaintiff's class certification motion should be denied.

3                                              Respectfully submitted,

4    Dated:  November 23, 2009                 SONNENSCHEIN NATH & ROSENTHAL LLP

5

6                                              By:_____ /S/ _____

7                                                        GAYLE M. ATHANACIO

8                                              Attorneys for Defendants
                                               ALLSTATE INSURANCE COMPANY AND
9                                              ALLSTATE INDEMNITY COMPANY

10   27336171\V-11

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

Case No. C 06-03778 JW (RS)                              DEFENDANTS' OPPOSITION TO PLAINTIFF'S
                                                         MOTION FOR CLASS CERTIFICATION