IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

Vlaho Miletak,

        Plaintiff,

   v.

Allstate Insurance Company, et al.,

        Defendants.

_____/

NO. C 06-03778 JW

**ORDER DENYING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT;
GRANTING PLAINTIFF'S MOTION FOR
CLASS CERTIFICATION**

## I.  INTRODUCTION

Vlaho Miletak ("Plaintiff") brings this putative class action against Allstate Insurance Company and Allstate Indemnity Company ("Defendants" or "Allstate"), alleging, *inter alia*, violation of Cal. Bus. & Prof. Code § 17200, *et seq.* and unjust enrichment.  Plaintiff alleges that Defendants used misleading bills to obtain payment of insurance premiums thirty or more days before the renewal date of insurance policies between the parties.

Presently before the Court are Defendants' Motion for Summary Judgment or Partial Summary Judgment[1] and Plaintiff's Motion for Class Certification.[2]  The Court conducted a hearing on February 1, 2010.  Based on the papers submitted to date and oral argument, the Court DENIES Defendants' Motion for Summary Judgment and GRANTS Plaintiff's Motion for Class Certification.

---

[1] (hereafter, "Defendants' Motion," Docket Item No. 206.)

[2] (hereafter, "Plaintiff's Motion," Docket Item No. 234 (filed under seal).)

## II.  BACKGROUND

**A.**     **Factual Allegations**

In a Fourth Amended Complaint filed on September 30, 2008, Plaintiff alleges as follows:

Plaintiff is a California resident; Defendants are Illinois corporations.[3]  Beginning on or around January, 1, 2002, Plaintiff purchased automobile insurance policies from Allstate.  (FAC ¶ 12.)  During this time, Plaintiff paid premiums according to Allstate's standardized billing statements ("Statements").   (Id.)  The Statements uniformly and deceptively stated that premiums were due one month before the actual due date.  (Id.)  The Statements requested that payment be sent by mail "no later than" thirty-five days before the actual due date if sending the payment by mail to "allow time for mail and processing."  (Id.)

Plaintiff did not know that Allstate's representations and omissions regarding the due date were false, and relied on those representations to his detriment.  (Id. ¶¶ 28-31.)  Defendants benefitted by collecting interest on the early premium payments.  (Id. ¶¶ 41-42.)

On the basis of the allegations outlined above, Plaintiff alleges eight causes of action: (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, (3) breach of fiduciary duty, (4) fraud, (5) constructive fraud, (6) negligent misrepresentation, (7) unjust enrichment, and (8) violation of Cal. Bus. & Prof. Code § 17200, *et seq.*

**B.**     **Procedural History**

On April 28, 2006, Vlaho and Filka Miletak filed a putative class action in Santa Clara County Superior Court.  On May 11, 2006, the Miletaks filed their First Amended Complaint, which contained eight causes of action.  On June 15, 2006, Defendant Allstate Insurance Co. timely removed this action to the Northern District of California based on diversity jurisdiction under 28 U.S.C. § 1441.  (See Docket Item No. 1.)

On February 8, 2007, the Court dismissed the First Amended Complaint with leave to amend as to two causes of action only.  (See Docket Item No. 42.)  On July 18, 2007, the Court dismissed

---

[3]  (Fourth Amended Class Action Complaint ¶¶ 1-4, hereafter, "FAC," Docket Item No. 175.)

both causes of action with prejudice as to Mrs. Miletak only.  (See Docket Item No. 53.)  Plaintiff filed a Third Amended Complaint On August 15, 2007,[4] and with leave of the Court, filed a Fourth Amended Complaint on June 2, 2008.  (See FAC.)

In the Fourth Amended Complaint, Plaintiff added Allstate Indemnity as a Defendant and asserted claims for RICO violations.  (See FAC.)  In its May 15, 2009 Order, the Court dismissed with prejudice Plaintiff's RICO claims but found that Plaintiff sufficiently alleged joint liability against Allstate Indemnity to survive the pleading stage.  (See Docket Item No. 194.)

Presently before the Court are Defendants' Motion for Summary Judgment or Partial Summary Judgment and Plaintiff's Motion for Class Certification.

### III.  STANDARDS

#### A.    Summary Judgment

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses."  Celotex v. Catrett, 477 U.S. 317, 323-24 (1986).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion . . . ."  Id. at 323.  "The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The non-moving party "may not reply merely on allegations or denials in its own pleading; rather, its response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e).

When evaluating a motion for summary judgment, the court views the evidence through the prism of the evidentiary standard of proof that would pertain at trial.  Anderson v. Liberty Lobby

---

[4]  (See Docket Item No. 55.)

3

Inc., 477 U.S. 242, 255 (1986).  The court draws all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight that particular evidence is accorded.  See, e.g., Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 520 (1992).  The court determines whether the non-moving party's "specific facts," coupled with disputed background or contextual facts, are such that a reasonable jury might return a verdict for the non-moving party.  T.W. Elec. Serv. v. Pac. Elec. Contractors, 809 F.2d 626, 631 (9th Cir. 1987).  In such a case, summary judgment is inappropriate.  Anderson, 477 U.S. at 248.  However, where a rational trier of fact could not find for the non-moving party based on the record as a whole, there is no "genuine issue for trial."  Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).

**B.    Class Certification**

The decision to certify a class is committed to the discretion of the district court within the guidelines of Federal Rule of Civil Procedure 23.  See Fed. R. Civ. P. 23; Doninger v. Pacific Northwest Bell, Inc., 564 F.2d 1304, 1309 (9th Cir. 1977).  The party seeking class certification bears the burden of establishing that each of the four requirements of Rule 23(a) and at least one requirement of Rule 23(b) have been met.  Dukes v. Wal-Mart, Inc., 509 F.3d 1168, 1176 (9th Cir. 2007) (citing Zinser v. Accufix Research Institute, Inc., 253 F.3d 1180, 1186 (9th Cir. 2001), amended, 273 F.3d 1266 (9th Cir. 2001)).  A district court may certify a class only if, after "rigorous analysis," it determines that the party seeking certification has met its burden.  General Telephone Co. of the Southwest v. Falcon, 457 U.S. 147, 158-61 (1982).

In reviewing a motion for class certification, the court generally is bound to take the substantive allegations of the complaint as true.  In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig., 691 F.2d 1335, 1342 (9th Cir. 1982) (citing Blackie v. Barrack, 524 F.2d 891, 901 (9th Cir. 1975)).  However, the court may look beyond the pleadings to determine whether the requirements of Rule 23 have been met.  Hanon v. Dataproducts Corp., 976 F.2d 497, 509 (9th Cir. 1992) (citation omitted).  In fact, "courts are not only at liberty to but must consider evidence which goes to the requirements of Rule 23 [at the class certification stage] even [if] the evidence

4

1   may also relate to the underlying merits of the case." <u>Dukes</u>, 509 F.3d at 1178 n.2 (internal

2   quotations and citation omitted).

3                                    **IV. DISCUSSION**

4   **A.      Motion for Summary Judgment**

5         Defendants move for summary judgment on the grounds, *inter alia*, that (1) the relief that

6   Plaintiff seeks amounts to a premium rebate which is prohibited under California's insurance

7   regulatory scheme, (2) Allstate provided Plaintiff with reasonable notice of the change in his billing

8   schedule and new billing statement, which Plaintiff ignored, and (3) California law does not

9   recognize an independent cause of action for unjust enrichment. (Defendants' Motion at 11-26.)

10  The Court addresses each grounds in turn.

11        **1.      California Insurance Regulatory Scheme**

12        Defendants contend that as a matter of law, California's statutory framework governing

13  insurance precludes Plaintiff's claims. (Defendants' Motion at 11-16.) More specifically,

14  Defendants contend that since any gain the insurance company's may glean from receiving a

15  premium before its actual due date is counterbalanced by the lower rates that the insurance

16  commissioner will approve, any relief granted to Plaintiff as a result of that gain would constitute

17  improper interference with the insurance commissioner's sole authority to set rates. (<u>Id.</u> at 11-14.)

18  Defendants further contend that the "filed rate doctrine" bars Plaintiff's challenge to Allstate's

19  billing practices. (<u>Id.</u> at 14-16.)

20        The California Insurance Code grants to the commissioner "exclusive jurisdiction over issues

21  related to ratemaking." <u>Walker v. Allstate Indem. Co.</u>, 77 Cal. App. 4th 750, 755 (Cal. Ct. App.

22  2000). Cal. Ins. Code § 1861.05(a) provides that "[n]o rate shall be approved or remain in effect

23  which is excessive, inadequate, [or] unfairly discriminatory." When determining whether a rate is

24  excessive, inadequate or unfairly discriminatory, "the commissioner shall consider whether the rate

25  mathematically reflects the insurance company's investment income." Cal. Ins. Code § 1861.05(a).

26        An insurer is entitled to the full payment on the first day of policy coverage. <u>Id.</u> § 480. An

27  insurer is also required to deliver by mail, "at least twenty days before expiration, a written or verbal

28                                        5

offer of renewal of the policy, contingent upon payment of premium as stated in the offer." <u>Id.</u> § 663.

Here, Plaintiff seeks relief from Defendants in the form of "full restitution and disgorgement of all monies, revenues and benefits of the monies wrongfully obtained and the value of the early use of such monies." (FAC at 15.) Since Plaintiff only seeks return of the value of the interest that Defendants earned over the thirty days that they had use of Plaintiff's premium payments before they were due, and not the premium payments themselves, the Court finds that Plaintiff's monetary recovery would not constitute a rebate or rate reduction. Although any benefit that Defendants receive in the short-term through the use of early-received premiums may eventually result in lower rates, pursuant to Cal. Ins. Code § 1861.05(a), the possibility of such a rate reduction at some unspecified future date is far too uncertain and indirect to compensate Plaintiff if Defendants' actions are found unlawful.

Furthermore, the Court finds that the filed rate doctrine is inapplicable to the circumstances here, and thus lends no support to Defendants' contention that Plaintiff's claims are barred. "The filed rate doctrine . . . bar[s] challenges under state law and federal antitrust laws to rates set by federal agencies." <u>E. & J. Gallo Winery v. EnCana Corp.</u>, 503 F.3d 1027, 1033-34 (9th Cir. 2007). The doctrine does not directly apply to a situation, as here, involving potential interference with rates set by a state agency rather than a federal agency.

Moreover, at least one California appellate court has rejected the premise that California's "prior approval" system is analogous to the federal filed rate doctrine. <u>See</u> <u>Fogel v. Farmers Group, Inc.</u>, 160 Cal. App. 4th 1403, 1418 (Cal. Ct. App. 2008). In <u>Fogel</u>, the court expressly rejected the defendant's claim that the plaintiff's lawsuit was barred because the relief he sought was effectively a premium refund. <u>Id.</u> The <u>Fogel</u> court's reasoning is equally applicable here:

> Although there are some similarities between the federal tariff system and California's "prior approval" system governing insurance rates, there is a key distinction. Under the federal system, once the filed tariff is approved, the carrier must charge that tariff and cannot offer rebates to its customers. It logically follows that customers cannot be allowed to effectively obtain rebates through lawsuits seeking damages. But under California's system regulating insurance rates, insurers are allowed to rebate excess premiums to their policyholders. Thus, even if the filed rate doctrine applied in the context

6

of a rate approved by a state regulatory agency (defendants have pointed to no cases in which it was), it nevertheless would have no application here.

Id. (internal citations omitted). In this case, Plaintiff seeks to recover only the value of the interest that Defendants gleaned by allegedly inducing him to pay his premium early, he does not seek a rebate or reduction in the premium itself.

Accordingly, the Court DENIES Defendants' Motion on the ground that Plaintiff's claims are barred under the California insurance regulatory scheme.

**2.** **Unfair Competition Law Claim**

Defendants move for summary judgment as to Plaintiff's California Unfair Competition Law ("UCL") claim on the grounds that (1) Plaintiff could not have relied on the due dates provided in the billing statements because on several occasions he did not abide by them, and (2) Plaintiff did not act as a "reasonable consumer" when he neglected to read the disclosures that were provided with his billing statement. (Defendants' Motion at 16-25.)

California's Unfair Competition Law defines unfair competition as any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. "'Fraudulent,' as used in the statute, does not refer to the common law tort of fraud but only requires a showing members of the public 'are likely to be deceived.'" Saunders v. Superior Court, 27 Cal. App. 4th 832, 839 (Cal. Ct. App. 1994) (citing Bank of the West v. Superior Court, 2 Cal. 4th 1254, 1267 (1992)). "This means that a section 17200 violation [can be shown] even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage." State Farm v. Superior Court of Los Angeles County, 45 Cal. App. 4th 1093, 1105 (Cal. Ct. App. 1996). Unfair business practices claims "must be evaluated from the vantage of a reasonable consumer." Freeman v. Time, Inc., 68 F.3d 285, 289 (9th Cir. 1995).

To have standing to bring a § 17200 claim, a plaintiff must have (1) suffered injury-in-fact and (2) lost money as a result of unfair competition. See Cal. Bus. & Prof. Code § 17204. The Court has previously held that the lost of use of money is not materially different from the loss of money. (See Docket Item No. 42.) The California Supreme Court has recently held that the

7

language of Section 17204 "imposes an actual reliance requirement on plaintiffs prosecuting a private enforcement action under the UCL's fraud prong." In re Tobacco Cases, 46 Cal. 4th 298, 326 (Cal. Ct. App. 2009). However, in showing "that the misrepresentation was an immediate cause of the injury-producing conduct, plaintiff need not demonstrate it was the only cause . . . . It is enough that the representation has played a substantial part, and so had been a substantial factor, in influencing his decision." Id. (internal citation omitted).

Further, the California Supreme Court has recognized that "[a] UCL action is equitable in nature; damages cannot be recovered. . . . [U]nder the UCL, '[p]revailing plaintiffs are generally limited to injunctive relief and restitution.'" In re Tobacco Cases, 46 Cal. 4th at 312 (internal citations omitted)..

### a.    Reliance

At issue is whether a misrepresentation or omission in the billing statement was a substantial factor in Plaintiff's decision to send in his premium payment thirty days early.

Defendants produced, *inter alia*, the following evidence to demonstrate that Plaintiff did not rely on any misrepresentation or omission in the billing statement: (1) Plaintiff's deposition testimony that he had never read documents included with his billing statement which explained his renewal payment options;[5] (2) Plaintiff's deposition testimony that the only portions of his insurance bill that he actually read were the due date and the amount to pay in full;[6] and (3) the renewal bill Plaintiff received for the October 24, 2004 to April 24, 2005 renewal policy period reflecting a payment due date of September 24, 2004 accompanied by a declaration that Allstate did not receive the payment for that bill until October 5, 2004.[7]

---

[5]  (Declaration of Gayle M. Athanacio in Support of Allstate Insurance Company and Allstate Indemnity Company's Motion for Summary Judgment, hereafter, "Athanacio Decl.," Ex. A at 59:23-61:08, 111:16-112:18, Docket Item No. 208.)

[6]  (Id. at 68:23-69:09, 83:03-14, 83:25-84:07.)

[7]  (Declaration of Carol Mattox in Support of Allstate Insurance Company and Allstate Indemnity Company's Motion for Summary Judgment ¶ 8, hereafter, "Mattox Decl.," Ex. D, Docket Item No. 207.)

In response, Plaintiff produced, *inter alia*, the following evidence to demonstrate that he did rely on a misrepresentation in the billing statement: (1) Plaintiff's deposition testimony that his practice was to rely solely on the stated due date on his bills to determine when he had to pay his insurance premiums;[8] (2) Plaintiff's deposition testimony that he believed at the time he paid his renewal premium that "the due date is the due date," and that the due date on the bill reflected when his payment was actually due.[9]

Upon review of the evidence, the Court finds that there is a triable issue of fact as to whether the representations in Allstate's billing statements regarding the payment due date were a substantial factor in Plaintiff's decision to submit his payments before they were actually due. While Defendants' evidence that Plaintiff did not read the explanatory materials accompanying the billing statements is uncontradicted, such evidence is relevant to whether Plaintiff acted as a reasonable consumer, not whether he relied on the representations regarding the due date. Plaintiff clearly testified that he did, in fact, rely solely on the due date listed on the billing statement in deciding when to send in his payment, and it is for the trier of fact to decide whether his testimony is credible.

Furthermore, Defendant's uncontradicted evidence that Plaintiff did not always abide by the due date listed on his billing statement does not by itself conclusively prove that Plaintiff understood that the due date listed on the billing statement was not the actual due date. Defendants admit that Plaintiff did, in fact, submit his payment for the first renewal bill more than thirty days in advance of the renewal policy effective date. (Defendants' Motion at 17.) There is no requirement under the UCL that Plaintiff rely on the misrepresentation on multiple occasions, or that there is a pattern of reliance. Plaintiff need only prove that he relied on the misrepresentation once. Thus, the Court finds that a reasonable jury could conclude that Plaintiff did rely on the due date listed in the billing statement in deciding to submit his payment before the actual due date.

---

[8] (Deposition of Vlaho Miletak at 47:19-48:10, 82:15-23, Plaintiff's Motion, Ex. T.)

[9] (Deposition of Vlaho Miletak at 28:3-13, Plaintiff's Motion, Ex. Y.)

Accordingly, the Court DENIES Defendants' Motion on the ground that Plaintiff cannot meet the reliance element of his UCL claim.

### b. Fraudulent Business Practices

At issue is whether under a reasonable consumer standard, members of the public would likely be deceived by the billing statement due dates.

Here, Defendants produce the following evidence that they adequately disclosed to Plaintiff when his renewal payment was actually due: (1) a brochure that was sent to Plaintiff along with his renewal bill that explained the billing change which allowed him to pay his renewal premiums in two installments rather than one lump sum,[10] and (2) Plaintiff's March 2005 renewal bill, which states a due date of March 24, 2005 but also states, "If you choose to pay your policy in full, please make sure we receive $367.86 by April 24, 2005."[11]

In response, Plaintiff produced a different brochure that purported to be "[a] guide to your new insurance bill," which stated that a section of the bill called "Your Bill at-a-Glance" contained "[a]ll the important details, like Due Date, To Pay in Full amount, and Minimum Amount Due," but did not make clear the significance of the "Due Date." (Plaintiff's Motion, Ex. CC.)

The Court finds that the question of whether a reasonable consumer would likely have been deceived by the billing statement and accompanying explanatory materials is most appropriately answered by the trier of fact. A reasonable consumer could certainly look at the "Due Date" on the billing statement and understand it to mean that payment must be made by that day. Reasonable minds could also differ as to whether the explanations of the new renewal payment option provided in the bill itself and the accompanying brochures were adequate to make a typical automobile insurance purchaser aware of when the renewal payment was actually due. Thus, the Court finds that there is a triable issue of fact as to whether Defendants' conduct was fraudulent within the meaning of the UCL.

---

[10] (Mattox Decl. ¶ 5, Ex. B.)

[11] (Mattox Decl. ¶ 9, Ex. F.)

10

1    Accordingly, the Court DENIES Defendants' Motion on the ground that Plaintiff did not act

2    as a reasonable consumer.

3                    **c.    Nature of Remedy Sought**

4    The Court, *sua sponte*, considers the issue of whether the remedy that Plaintiff seeks is

5    equitable or restitutionary in nature, and thus recoverable under the UCL.  As previously discussed,

6    Plaintiff seeks "full restitution and disgorgement" of any benefit Defendants received as a result of

7    unlawfully having the early use of Plaintiff's insurance premium payments.  (See FAC at 15.)  The

8    Court considers whether Plaintiff's prayer for relief is restitutionary within the meaning of the UCL.

9    California Business and Professions Code section 17535 provides: "The court may make

10   such orders or judgments . . . which may be necessary to restore any person in interest any money or

11   property, real or personal, which may have been acquired by means of any practice in this chapter

12   declared to be unlawful."  In more general terms, "a court of equity may exercise the full range of its

13   inherent powers in order to accomplish complete justice between the parties, restoring if necessary

14   the *status quo ante* as nearly as may be achieved."  People v. Superior Court, 9 Cal. 3d 283, 286

15   (1973).  Furthermore, "where a person who has a duty to pay the value of a benefit which he has

16   received, he is 'also under a duty to pay interest upon such value from the time he committed a

17   breach of duty in failing to make restitution.'"  E.H. Boly & Son, Inc. v. Schneider, 525 F.2d 20, 25

18   (9th Cir. 1975) (citing RESTATEMENT OF RESTITUTION § 156).

19   Here, if the factfinder ultimately determines that Defendants obtained use of Plaintiff's

20   premium payments through unlawful means, and thus must return to Plaintiff the value of any

21   benefit Defendants received through that use, Plaintiff will only be made whole if he receives the

22   interest that he would have earned had he held the money until it actually came due.  Since Plaintiff

23   did eventually receive the service for which he paid, namely coverage under Defendant's insurance

24   policy, Plaintiff is not entitled to the return of the premium payments themselves.  Thus, the only

25   remedy remaining to restore the *status quo ante* is the return of the value of the interest Plaintiff

26   would have earned on any premium payments that he paid early.  The Court finds that such a

27   remedy is restitutionary in nature, and therefore recoverable under the UCL.

28

                                                    11

### 3.     Unjust Enrichment Claim

Defendants move for summary judgment as to Plaintiff's unjust enrichment claim on the ground that no such cause of action is recognized under California law.

Formally, "there is no cause of action in California for unjust enrichment." <u>Melchior v. New Line Prods., Inc.</u>, 106 Cal. App. 4th 779, 793 (Cal. Ct. App. 2003); <u>McBride v. Boughton</u>, 123 Cal. App. 4th 379, 387 (Cal. Ct. App. 2004). "The phrase 'Unjust Enrichment' does not describe a theory of recovery, but an effect: the result of a failure to make restitution under circumstances where it is equitable to do so." <u>Melchior</u>, 106 Cal. App. 4th at 793 (citing <u>Lauriedale Assocs., Ltd. v. Wilson</u>, 7 Cal. App. 4th 1439, 1448 (Cal. Ct. App. 1992)). However, unjust enrichment is a broader principle than restitution in that it supports disgorgement of benefits unjustly obtained even if the plaintiff has not suffered any loss. <u>County of San Bernardino v. Walsh</u>, 158 Cal. App. 4th 533, 542 (Cal. Ct. App. 2007). A court may look past the formal label of a claim for "unjust enrichment" if the allegations state a claim which allows for the type of recovery supported by the principle of unjust enrichment. <u>McBride</u>, 123 Cal. App. 4th at 387.

In this case, the Court has found that Plaintiff may establish an unjust enrichment claim by proving that (1) the Defendants received a benefit (2) that it unjustly retained. (<u>See</u> Docket Item No. 42.) Upon review of the evidence discussed above, the Court finds that there are triable issues of fact as to whether Defendants received the benefit of the use of Plaintiff's premium payment prior to its due date, and that it was not entitled to that use and thus unjustly retained that benefit. Although Plaintiff's unjust enrichment claim cannot stand alone as an independent cause of action, the Court has already found in a prior Order in this case that Plaintiff may seek relief based on an unjust enrichment theory in relation to his UCL claim. (<u>See</u> Docket Item No. 52 at 9.)

Accordingly, the Court DENIES Defendants' Motion as to Plaintiff's unjust enrichment claim on the ground that California law does not recognize such a claim as an independent cause of action.

## B.     Motion for Class Certification

Plaintiff moves to certify a class comprising:

All California Allstate Insurance Company and Allstate Indemnity Company motor vehicle insureds from January 1, 2002 through December 31, 2005 who received Allstate motor vehicle insurance renewal bills indicating a DUE DATE for payment one month before the date the policy renewed and who paid their full insurance renewal premiums one month or more before the renewal policy effective date.

(Plaintiff's Motion at 9.)

Rule 23(a) provides four requirements that must be satisfied for class certification: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). These requirements are commonly referred to as numerosity, commonality, typicality, and adequacy of representation, respectively. See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998) (citing Amchem Prods., Inc. v. Windsor, 521 U.S. 591 (1997)).

The plaintiffs must also establish that one or more of the grounds for maintaining the suit as a class action are met under Rule 23(b): (1) there is a risk of substantial prejudice from separate actions; (2) declaratory or injunctive relief benefitting the class as a whole would be appropriate; or (3) common questions of law or fact predominate and the class action is superior to other available methods of adjudication. Fed. R. Civ. P. 23(b). In class actions certified under Rule 23(b)(1) or (b)(2), class members do not have mandatory rights to exclude themselves from the judgment by opting out of the class. See Molski v. Gleich, 318 F.3d 937, 947 (9th Cir. 2003). Such mandatory opt out rights automatically attach to Rule 23(b)(3) classes only. Id.; Fed. R. Civ. P. 23(c)(2)(B).

Federal Rule of Civil Procedure 23(c) "imposes an independent duty on the district court to determine by order that the requirements of Rule 23(a) are met regardless of the defendant's admissions."[12] Davis v. Hutchins, 321 F.3d 641, 649 (7th Cir. 2003); see also Davis v. Romney, 490 F.2d 1360, 1366 (3d Cir. 1974) ("[I]t is not sufficient that plaintiffs make an uncontested motion for

---

[12] Federal Rule of Civil Procedure 23(c)(1) states, in relevant part, "As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained."

a class determination.  The Rules impose the additional requirement of class determination and definition on the district judge.  Relief cannot be granted to a class before an order has been entered determining that class treatment is proper.")  A formal class certification determination serves the important function of protecting absent class members whose rights may be affected by the class certification.  <u>Davis</u>, 490 F.3d at 1366; 7B Wright et al., Federal Practice and Procedure § 1785 (3d ed. 1998).  Thus, "[a]llowing certification by default or because the defendant has admitted that the class exists, with no independent analysis or determination by the district judge, would remove this important protection."  <u>Davis</u>, 321 F.3d at 649.

The Court proceeds to consider whether the requirements of Rule 23 are met with regard to the proposed class.[13]

## 1.    Requirements Under Rule 23(a)

Plaintiff contends that the proposed class satisfies the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a).  (Plaintiff's Motion at 9.)  The Court considers each requirement in turn.

### a.    Numerosity

Defendants do not challenge Plaintiff's showing that the numerosity requirement has been met.[14]  However, the Court undertakes its own analysis of the numerosity element as required under Rule 23(c).

---

[13]  Defendants have filed multiple objections to evidence produced by Plaintiff in support of his Motion for Class Certification.  (<u>See</u> Defendants Allstate Insurance Company's and Allstate Indemnity Company's Objections to Declarations of Jerald Udinsky and Geoffrey Nunberg, Docket Item No. 220; Defendants' Objections to Declaration of Vlaho Miletak in Support of Plaintiff's Motion for Class Certification, Docket Item No. 222; Defendants' Objections to Declaration of Mark P. Millen in Support of Plaintiff's Motion for Class Certification, Docket Item No. 223.)  The Court does not rely on any of the documents to which Defendants object, with the exception of the Samuel Kornhauser Declaration which is discussed <i>infra</i> at note 17, in reaching its decision.  Thus, the Court OVERRULES Defendants various evidentiary objections as moot.

[14]  (<u>See</u> Defendants' Opposition to Plaintiff Miletak's Motion in Support of Order Granting Class Certification and Appointment of Class Counsel, hereafter, "Defendants' Opposition," Docket Item No. 219.)

1    The numerosity requirement of Rule 23(a) is satisfied if the members of the proposed class

2    are "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  To be

3    impracticable, "Rule 23(a)(1) does not mandate that joinder of all parties be impossible – only that

4    the difficulty or inconvenience of joining all members of the class make use of the class action

5    appropriate." Cen. States Se. and Sw. Areas Health & Welfare Fund v. Merck-Medco Managed

6    Care, L.L.C., 504 F.3d 229, 244-45 (2d Cir. 2007).  "The numerosity requirement requires

7    examination of the specific facts of each case and imposes no absolute limitations." Gen. Tel. Co. v.

8    E.E.O.C., 446 U.S. 318, 330 (1980).  "[G]enerally if the named plaintiff demonstrates that the

9    potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." Stewart v.

10   Abraham, 275 F.3d 220, 227 (3rd Cir. 2001).

11   Here, Plaintiff contends that the proposed Class includes well over 200,000 people.  (Motion

12   at 10.)  Defendants concede that close to 200,000 people paid their bills more than 30 days before

13   the renewal date.[15]  Accordingly, the Court finds that the proposed class satisfies the numerosity

14   requirement.

15                          **b.      Commonality**

16   Defendants do not challenge Plaintiff's showing that the numerosity requirement has been

17   met.  (See Defendants' Opposition.)  However, the Court undertakes its own analysis of the

18   commonality element as required under Rule 23(c).

19   The commonality requirement is satisfied if there are "questions of law or fact common to

20   the class." Fed. R. Civ. P. 23(a)(2).  The questions of law or fact need not be identical to satisfy

21   Rule 23(a)(2).  Rather, "[t]he existence of shared legal issues with divergent factual predicates is

22   sufficient, as is a common core of salient facts coupled with disparate legal remedies within the

23   class." Staton v. Boeing Co., 327 F.3d 938, 953 (9th Cir. 2003).

24   In this case, all members of the proposed class received Statements displaying the same

25   formatted information, and all of them paid their six-month insurance premiums at least one month

26   _____

27        [15] (Defendant Allstate Indemnity Company's Responses to Plaintiff's Interrogatory Set No. 1 at 5, Plaintiff's Motion, Ex. H.)

28                                         15

1   prior to the actual due date for policy renewal.  Whether the Statements were deceiving to a

2   reasonable consumer is a question of fact common to the proposed class.  Similarly, the type and

3   measure of damages, *i.e.*, the lost interest on early payments, is a common question of law.

4        Thus, the Court finds that the proposed class satisfies the commonality requirement.

5        **c.    Typicality**

6        Defendants contend that the typicality requirement is not met because Plaintiff did not read

7   his policy documents or other notices.[16]  (Defendants' Opposition at 13-14.)

8        The typicality requirement is satisfied when "the claims or defenses of the representative

9   parties are typical of the claims and defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Claims are

10  typical if they arise "from the same course of events, and each class member makes similar legal

11  arguments to prove the defendant's liability."  Armstrong v. Davis, 275 F.3d 849, 868 (9th Cir.

12  2001) (citations omitted).  "Representative claims are 'typical' if they are reasonably co-extensive

13  with those of absent class members; they need not be substantially identical."  Hanlon v. Chrysler

14  Corp., 150 F.3d 1011, 1020 (9th Cir. 1998).  "In determining whether typicality is met, the focus

15  should be 'on the defendants' conduct and plaintiff's legal theory,' not the injury caused to the

16  plaintiff."  Simpson v. Fireman's Fund Ins. Co., 231 F.R.D. 391, 396 (N.D. Cal. 2005) (quoting

17  Rosario v. Livaditis, 963 F.2d 1013, 1018 (7th Cir. 1992)).  Nonetheless, the representative parties

18  must at a minimum "be part of the class and possess the same interest and suffer the same injury as

19  the [other] class members."  Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 156 (1982).

20       In this case, Plaintiff alleges injury stemming from early payment of insurance premiums

21  based on deceptive Statements sent by Defendants between 2002 and 2005.  The proposed class

22  consists of policy holders who also made early payments based on identical Statements sent by

23  

---

24  [16] Defendants rely on Caro v. Proctor & Gamble Co., 18 Cal. App. 4th 644 (Cal. Ct. App. 1993), for the proposition that a plaintiff who does not read the full text of an allegedly deceptive statement is not a typical class member.  (Defendants' Opposition at 15).  However, Caro is distinguishable.  Caro involved orange juice packaging that was allegedly misleading because it indicated the juice was "fresh."  The court found that lead plaintiff's testimony regarding the packaging provided substantial evidence that he understood from the advertising that the juice was not fresh.  Id.  In contrast, Plaintiff in this case alleges that he was misled by the Statements and understood them to require payments more than thirty days before the due date.

28                                        16

1  Defendants during the same time period. Plaintiff and the other class members were also subjected

2  to the same form of damages; namely, Defendants used the early profits as a "float" for its own

3  economic advantage. (FAC ¶ 41.) Thus, Plaintiff's claims are coextensive with those of the

4  proposed class because they involve the same legal claim based on the same course of events.

5      The Court finds Defendants' contention unavailing because the Court applies an objective

6  "reasonable consumer" standard in determining whether Defendants' billing statements or other

7  materials are fraudulent within the meaning of the UCL. See Freeman v. Time, Inc., 68 F.3d 285,

8  289 (9th Cir. 1995). Furthermore, the Court has found that Plaintiff made a sufficient showing to

9  create a triable issue of fact as to whether he relied on Defendants' representations regarding the due

10  date, and he thus has standing to assert a claim under the UCL. See supra Part IV.A.2. Plaintiff's

11  alleged failure to carefully scrutinize the Statements is not relevant to establishing his claim or those

12  of the absent class members. Accordingly, the Court finds that Plaintiff's claims are typical of the

13  proposed class.

           **d.    Adequacy**

15      At issue is whether Plaintiff can adequately represent the class.

16      The adequacy requirement is satisfied when "the representative parties will fairly and

17  adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Constitutional due process

18  concerns require that absent class members be afforded adequate representation "before entry of a

19  judgment which binds them." Hanlon, 150 F.3d at 1020 (citing Hansberry v. Lee, 311 U.S. 32, 42-

20  43 (1940)). Thus, a determination of adequacy is based on two inquiries: (1) whether the proposed

21  representative plaintiff has conflicts of interest with the proposed class, and (2) whether plaintiff is

22  represented by qualified and competent counsel. Dukes v. Wal-Mart, Inc., 509 F.3d 1168, 1185 (9th

23  Cir. 2007); see Hanlon, 150 F.3d at 1020; see also Molski v. Gleich, 318 F.3d 937, 955 (9th Cir.

24  2003).

25      Here, the Court first addresses Plaintiff's adequacy as class representative; the Court

26  considers counsel's adequacy in Part IV(C), supra. In this case, Plaintiff's interests coincide with

27  the interests of other members of the proposed class because they were allegedly injured in the same

28                                                        17

1   manner and seek the same relief.  Thus, Plaintiff does not have any apparent conflict of interest with

2   the proposed class.  Accordingly, the Court finds that Plaintiff satisfies the adequacy requirement.

3   The Court proceeds to consider whether the proposed class meets the requirements of Rule

4   23(b).

5   **2.     Requirements Under Rule 23(b)**

6   In addition to the four requirements of Rule 23(a), a class action may only be brought if it

7   satisfies one of the three requirements set forth in Rule 23(b).  Here, Plaintiff moves for class

8   certification under Rule 23(b)(3).  (Plaintiff's Motion at 19.)

9   Under 23(b)(3), a class action may be maintained when (1) "the court finds that the questions

10  of law or fact common to the class members predominate over any questions affecting only

11  individual members" and (2) "that a class action is superior to other available methods for fairly and

12  efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Relevant to the court's

13  consideration are the following factors: (A) the class members' interests in individually controlling

14  the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning

15  the controversy already begun by or against class members; (C) the desirability of concentrating the

16  litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class

17  action.  Id.  The Court addresses the predominance and superiority factors in turn.

18  **1.     Whether Common Questions Predominate**

19  At issue is whether common questions predominate.

20  "[I]mplicit in the satisfaction of the predominance test is the notion that the adjudication of

21  common issues will help achieve judicial economy."  Valentino v. Carter-Wallace, Inc., 97 F.3d

22  1227, 1234 (9th Cir. 1996) (quotation omitted).  However, the court should "balance these concerns

23  with the greater number of questions affecting individual class members."  In re N. Dist. of Cal.,

24  Dalkon Shield, 693 F.2d 847, 856 (9th Cir. 1982).

25  Here, the common fact in this case is that members of the proposed class received

26  Defendants' standardized Statements from January 1, 2002 through December 31, 2005.  The

27  predominant issue is whether these Statements violated California law and unjustly enriched

28

1    Defendants by deceptively inducing class members to pay their premiums at least thirty days before

2    the actual due date.  Since the claims are based on identical statements received during a common

3    time period and allege a uniform type of harm, common issues predominate.[17]

4              **2.      Whether a Class Action is the Superior**

5         At issue is whether a class action is the superior method of adjudicating the issues.

6         A class action may be the superior means of litigating the common issues if it "will reduce

7    litigation costs and promote greater efficiency."  <u>Valentino v. Carter-Wallace, Inc.</u>, 97 F.3d at 1234

8    (citing <u>Dalkon Shield</u>, 693 F.2d at 856).  Furthermore, a class action is superior when it is the only

9    realistic form of adjudication available.  <u>Valentino</u>, 97 F.3d at 1234-35.

10        In this case, each member's claim is likely too small to be worth pursuing in an individual

11   action.  Thus, a class action may be the only method for providing meaningful recovery.

12   Additionally, in light of the size of the proposed class and the geographic dispersion of the class

13   members, concentrating the claims into a single action in a single forum is desirable.  Such

14   concentration will prevent disparate outcomes and inconsistent rulings with regard to both class

15   members and Defendants.  The size of the class will not make the lawsuit unmanageable because

16   Defendants' computerized records will make it easy to identify and notify class members and

17   determine the extent of damages, if any, that each has suffered.  Finally, Plaintiff represents that no

18   other class actions are pending that would resolve the issues raised in this case.  (Plaintiff's Motion

19   at 23.)  On the basis of these considerations, the Court finds that a class action is a superior method

20   for resolving this dispute.

21        In Opposition, Defendants contend that Allstate Indemnity policy holders cannot properly

22   fall within the class because "Plaintiff has no standing to assert claims against entities with whom

23   _____

24        [17]  The Court notes that its finding in Part IV.A.2.c that the remedy sought is restitutionary in
     nature is not inconsistent with its finding here that common questions predominate.  The value of
25   interest owed to each class member may be determined using a relatively simple mathematical
     formula, e.g., multiplying the amount of early premium payments by the length of time Defendants
26   unlawfully had use of those payments by an average standardized interest rate from the time period
     in question.  Thus, determining the remedy owed to each class member will not involve highly
27   individualized fact determinations.

28                                          19

1  Plaintiff was never insured and to whom he paid nothing." (Defendants' Opposition at 24.) The

2  Court has already resolved the issue of Plaintiff's standing to sue Allstate Indemnity in a prior

3  Order, and Defendants raise no new law or facts here to persuade the Court to reconsider that

4  Order.[18] Since Plaintiff alleges that Allstate Indemnity and Allstate Insurance acted as joint

5  venturers, agents of each other and as co-conspirators, Plaintiff may bring suit against Allstate

6  Indemnity on a theory of joint liability. (Id.) Thus, the Court finds that a class action is the superior

7  method of adjudicating the issues here.

8      Accordingly, the Court GRANTS Plaintiff's Motion for Class Certification.[19]

9  **C.  Lead Counsel**

10     At issue is whether Plaintiff's counsel can adequately represent the interests of the class.

11  Defendants contend that Mr. Kornhauser is not adequate because of certain discovery disputes

12  between the parties. (Defendants' Opposition at 18 n.7.)

13     When a court certifies a class under Rule 23, the court must also appoint class counsel that

14  will "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4). In

15  appointing class counsel, the court must consider (1) the work counsel has done regarding the

16  action; (2) counsel's experience with class actions and relevant complex litigation; (3) counsel's

17  understanding of relevant law; and (4) the resources counsel will commit to representing the class.

18  Fed R. Civ. P. 23(g)(1)(A). A court may also consider other factors relevant to counsel's ability to

19  fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(g)(1)(B).

20     In this case, Plaintiff's Counsel, Samuel Kornhauser, has pursued this action since April 28,

21  2006. Mr. Kornhauser represents that he has been practicing law in California for over thirty years

22  and has been involved in a number of class actions, including class action cases involving unfair

23

24      _____

25     [18] (Order Granting Allstate Insurance's Motion to Dismiss with Prejudice; Denying Defendant Allstate Indemnity's Motion to Dismiss at 11, Docket Item No. 194.)

26     [19] On January 19, 2010, Plaintiff filed a Motion for Leave to File Reply Memorandum in Support of Motion for Class Certification One Day Out of Time. (Docket Item No. 241.) In light of

27  this Order, the Court DENIES as moot Plaintiff's Motion for Leave.

28                          20

competition.  (Declaration of Samuel Kornhauser ¶¶ 2-4, Plaintiff's Motion, Ex. W.)[20]  The Court

finds Defendants' challenge as to Mr. Kornhauser's adequacy resulting from the parties' discovery

disputes unsubstantiated by the record or significant sufficient to question Mr. Kornhauser's

competency to represent the class.  Accordingly, the Court appoints Plaintiff's Counsel as Class

Counsel.

## V.  CONCLUSION

The Court DENIES Defendants' Motion for Summary Judgment.  The Court GRANTS

Plaintiff's Motion for Class Certification as follows[21]:

(1)    The Class shall consist of "all California Allstate Insurance Company and Allstate

Indemnity Company motor vehicle insureds from January 1, 2002 through December

31, 2005 who received Allstate motor vehicle insurance renewal bills indicating a

DUE DATE for payment one month before the date the policy renewed and who paid

their full motor vehicle insurance premiums one month or more before the renewal

policy effective date."

(2)    Attorney Samuel Kornhauser shall serve as Class Counsel.

---

[20]  Defendants object to the Court's consideration of Mr. Kornhauser's declaration on the ground that it lacks foundation as to the adequacy of Mr. Kornhauser to pursue this action on behalf of Plaintiff and the class.  (Defendants' Objections to Declaration of Samuel Kornhauser in Support of Plaintiff's Motion for Class Certification, hereafter, "Objection to Kornhauser Decl.," Docket Item No. 224.)  Specifically, Defendants contend that Mr. Kornhauser failed to provide sufficient details of his prior class action representation experience.  (Id. at 2.)  The Court finds the level of detail Mr. Kornhauser provides to be adequate, and Defendants provide no basis on which to doubt the veracity of Mr. Kornhauser's representations.  Thus, the Court OVERRULES Defendants' Objection to the Kornhauser Declaration.

[21]  On February 3, 2010, Plaintiff filed a Request to Submit Supplemental Authorities Regarding Class Certification/Summary Judgment.  (Docket Item No. 243.)  Since the Court finds that Plaintiff prevails on both of the present Motions, the Court DENIES Plaintiff's Request to Supplement as moot.

1    On or before **March 29, 2010**, the parties shall file for the Court's approval a proposed form

2    of class notice and a joint proposal for dissemination of notice.

3

4    Dated:  March 5, 2010

5                                                          JAMES WARE
                                                          United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Bonnie Lau blau@sonnenschein.com
Gayle M. Athanacio gathanacio@sonnenschein.com
Hillary Noll Kalay hkalay@sonnenschein.com
Mark Paul Millen MPMillen@aol.com
Samuel Kornhauser skornhauser@earthlink.net
Samuel Kornhauser skornhauser@earthlink.net
Sanford Kingsley skingsley@sonnenschein.com

**Dated:  March 5, 2010**                    **Richard W. Wieking, Clerk**


                                        **By:____/s/ JW Chambers_____**
                                             **Elizabeth Garcia**
                                             **Courtroom Deputy**